UNITED STATES, for Use and Benefit of SMITH, v. MARYLAND CASUALTY CO. et al.

No. 10921.

Circuit Court of Appeals, Fifth Circuit.

Dec. 18, 1944.

Turner B. Morgan, of Shreveport, La., and Cary M. Abney, of Marshall, Tex., for appellant.

L. Percy Garrot, of Shreveport, La., for appellees.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

Smith, the appellant, rented four tractors and a bull dozer to Glassell-Taylor Co. & Robinson-Young, as Associated Contractors, who had a contract with the United States to do grading at the site of an ordnance plant to be constructed at Karnack, Texas. Maryland Casualty Company was surety on the construction bond furnished by the Contractors.

The contract was terminable at the option of Contractors upon notice to lessor, but they were required to redeliver equipment to lessor at the point from which it had been shipped, or at some other place no more distant than the point of original shipment.

In the course of time Contractors telegraphed lessor as follows: "Terminating your four 75 tractors tomorrow. Advise where to ship." In response to the wire, lessor promptly went to Karnack to inspect his equipment and found that, in conformity with some previous and general directive, order, or regulation, Army officers in charge of construction had ordered that the equipment not be moved so long as the Contractors were using similar equipment

which had been leased from, and was owned by, the Government. The rental on Government equipment was considerably less than the rental on like equipment of the lessor. The object of such order evidently was to prevent the tying up of Government equipment when similar private equipment was available on the scene. The Contractors learned shortly after the sending of the telegram for termination of the existence and effect of this order and that while this order was in effect and as long as they continued to rent and use the Government equipment they could not return the equipment to lessor as they had agreed to do upon termination of the contract. Although the contractors served notice of termination they did not cease the use of the Government equipment nor did they redeliver the lessor's equipment, but continued for some time to use some of it to the extent that the lower Court allowed, by way of quantum meruit, the lessor a recovery in the sum of $706.25 as rental for the use of the equipment after May 19, 1942, the date of the alleged termination of the agreement. The lower Court also awarded lessor the sum of $763.20 as rental under the contract that had accrued prior to May 19, but it disallowed recovery for the regular monthly rentals after the date of the telegram until the date of the return and release of the equipment in July.

The theory of the defense and evidently of the lower Court seems to have been that the Contractors were prevented by the Government from redelivering the tractors, and the completion of the contract having thus been made impossible the Contractors were relieved of performance or from liability for non-performance.

We do not agree.

■ The expression attributed to the lower Court by stipulation of counsel that "the Government had prior to that time frozen all privately rented equipment on the job site" is neither apt nor accurate. Lessor's equipment was not frozen by the Government but by the act of the Contractors in "freezing on to" the equipment rented from the Government at less cost, thereby making the so-called "freezing order" applicable to lessor's tractors. The fact that the Contractors could secure tractors from the Government for less money than they were obligated to pay lessor would not relieve Contractors from their liability under their contract, nor would it immunize them from liability for their part in bringing about the tying up of lessor's property from May 19 to July 7. The consequences to lessor of the so-called freezing order were optional with lessees and not absolute. No immutability was attached to the freezing order unless the lessees chose to continue the use of the Government tractors. They could have released the Government's equipment and used that which was privately owned, or they could have released the Government's equipment as well as any privately owned equipment that they saw fit, but the optional and continued use of the equipment of the Government did not relieve them from the obligation of their contract to lessor.

■ Furthermore, it is undisputed that lessees continued to use some of lessor's equipment after it sent the telegram purporting to terminate the contract. This was not a contract in which a party could cast aside the incidents that were burdensome and hold fast to those which were advantageous. See Sec. 444, 12 Am.Jur., p. 1027. For instance, one ordinarily would not be upheld in the assertion that he had canceled his obligation to pay rent on a house if thereafter he had voluntarily continued to live in it without the lessor's permission.

The contract with lessor required lessees to pay rent on or redeliver the tractors. They did not protect themselves by a contract which provided that they would pay rent or redeliver only in the event another of their contractees would permit them. This so-called freezing was not a web of the lessor's weaving. Where one of two innocent persons must suffer the burden should fall upon him who had it within his power to have prevented it but failed to do so. The Contractors, and not the lessor, made the grading contract with the Government as well as the leases of its equipment, and their failure to make appropriate provisions to safeguard themselves against the unbridled discretion of the representatives of their principal contractee is in no wise attributable to lessor, and if the rental and retention of Government equipment wrought injurious consequences upon the lessees, no just or legal reason is shown as to why the consequences should be cast upon one who had no part in making such leases or in the continued use of Government equipment.

■ If the covenant to return the equipment is independent of the covenant

to pay rent thereon, as the right of termination and other features of the contract seem to indicate, the Contractors are liable for any damages,[1] as distinguished from rent, caused by their failure to redeliver the machinery according to their contract, unless the Court should also find that the telegram purporting to terminate the contract was ineffectual in accomplishing its purpose in view of the subsequent use of some of the equipment, and that such use had the effect of continuing in effect the contract to pay a stipulated monthly rental until redelivery. An assertion of the termination of a contract may be nullified by the subsequent acceptance of benefits growing out of the contract. Brennan v. National Equitable Investment Co., 247 N. Y. 486, 160 N.E. 924; Pope v. Clendennen, Tex.Civ.App., 257 S.W. 335. The damages for the mere unauthorized detention of rented equipment after termination of the use thereof is not ordinarily wholly measurable by the provisions in an independent covenant for the stipulated monthly rental of the equipment in the absence of any substantial use of such equipment during the period of unauthorized detention, for the reason that such rental value generally contemplates and includes a substantial allowance for the depreciation or wear and tear to which the equipment would not be subjected after the cessation of the use of such equipment. Cook v. Packard Motor Car Company, 88 Conn. 590, 92 A. 413, L.R.A.1915C, 319, text 324.

The case is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

---

[1] See Damages, 15 Am.Jur., Sec. 45, pp. 445, 446; Bailments, 6 Am.Jur., Sec. 291, pp. 376, 377.