**FIRST NATIONAL BANK OF McMINNVILLE, TENNESSEE, Plaintiff,**

v.

**Thomas S. KLEPPE, etc., Defendant.**

**No. CIV–4–75–1.**

United States District Court, E. D. Tennessee, Winchester Division.

Aug. 22, 1975.

R. E. Bonner, Jr., McMinnville, Tenn., for plaintiff.

Hugh J. Moore, Jr., Asst. U. S. Atty., Chattanooga, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action under 15 U.S.C. § 634(b)(1) by the First National Bank of McMinnville, Tennessee (bank) to recover from the Small Business Administration (SBA) a portion of a loss the bank sustained on a loan to Excel Manufacturing Company (Excel). Trial was to the Court on August 8, 1975.

The bank and SBA were operating under a blanket agreement, whereunder, *inter alia,* SBA guaranteed 90% of any loan submitted to its officials by the bank and approved by such officials. The bank closed, disbursed and serviced such loans and had the responsibility of obtaining the hypothecation of the collateral securing the repayments of such loans. SBA was paid by the bank for its guaranty.[1]

Excel desired to borrow $100,000 on November 18, 1970 with which to retire its existing indebtednesses (including a SBA-participation loan with another lender), acquire operating capital, and purchase additional equipment. The parties intended that the 1970 loan was to be secured by Excel's accounts receivable, inventories, equipment (including the aforementioned additional equipment

---

1. Different methods of payment were employed by the parties. This loan seems to have fallen within the time period wherein the bank paid SBA on a semi-annual basis.

to be acquired), leasehold improvements, the cash surrender value of a life insurance policy, and the guaranty of its principal stockholders, Mr. and Mrs. Bernard J. Genson. Such stockholders, in turn, were to secure their guaranty of Excel's loan by the hypothecation of two improved lots of real estate (one of which was to be subject to the lien of a first deed of trust), shares of stock in another bank, and shares in an investors' trust.

At SBA's request, the bank obtained a financing statement on Excel's equipment, and this document was duly filed with the Tennessee secretary of state. The bank chairman failed negligently, however, to obtain the hypothecation of the other assets of Excel and obtained no hypothecation of the collateral owned by Mr. and Mrs. Genson. Personnel of SBA discovered in due course that the aforementioned hypothecations had not been obtained by such chairman in accordance with the agreement of the parties; yet, SBA continued to accept payment from the bank of the consideration of the former's guaranty of the Excel loan.

During November, 1971 the bank commenced the negotiation of yet another loan to Excel to be guaranteed by SBA, a part of the proceeds of which were to be applied in retiring the 1970 loan which the Court is now treating. These negotiations ended, when Mr. and Mrs. Genson declined to hypothecate their personal assets to secure their guaranty of the proposed new loan.

It became apparent in the latter part of 1973 that Excel would default on its existing loan. The bank called upon SBA to purchase 90% of the balance outstanding thereupon. SBA caused a Treasury check for $66,037.74 to be issued to the bank, conditioned upon the execution by Mr. and Mrs. Genson of the aforementioned security instruments and the assignment of the $100,000 note to SBA. Being unable to obtain these doc-

uments from such stockholders, the bank returned the aforementioned check to SBA.

No affirmative action to rescind its guaranty agreement with the bank was taken by SBA until August 16, 1974, when it advised the bank that, because its risk had been increased materially by the aforementioned negligence of the bank officers, it would not purchase 90% of Excel's loan. The bank obtained judgment against Mr. and Mrs. Genson, including a fee[2] for its attorney of $9,000. Unrecovered expenses of liquidation amounted to $5,206.65. Liquidation of Excel's assets reduced the loss on default of the loan to $29,268.33 and unpaid interest.

▆▆▆ SBA cannot escape liability to the bank in this manner. Its officials discovered that the late Mr. R. S. Walling, the bank official who handled the Excel account and this loan, had failed negligently to obtain the agreed security documents. This substantial and fundamental nonperformance of the contract by the bank went to " * * * the very root of the contract * * * ", *United States v. Southern Construction Company,* C.A. 6th (1961), 293 F.2d 493, 498[1], [3], and gave SBA the right to rescind its contract with the bank. At this point, SBA was confronted with an election of remedies: it could have elected after such material breach by the bank, to rescind its agreement with the bank or to stand on it. *Union Paving Co. v. United States,* C.C.A. 9th (1945), 150 F.2d 390, 394[2]. The agency had a reasonable time in which to rescind its agreement after discovery of the material breach, *Jack Mann Chevrolet Co. v. Associates Inv. Co.,* C.C.A. 6th (1942), 125 F.2d 778, 783[3], [4], but its right to rescind was not suspended while SBA and the bank experimented with other remedies (in the form of a second loan, *supra*) as alternatives to rescission, 17A C.J.S. Contracts § 443, at 556–557. SBA lost or waived its right to rescind such

---

**2.** The defendant does not place in issue the reasonableness of this fee but does place in issue the question of whether the litigation in

which it was awarded was necessary under the circumstances.

agreement, by continuing to accept from the bank benefits thereunder. *United States v. Maryland Casualty Company,* C.C.A. 5th (1944), 146 F.2d 379, 381[4]. Not having elected to rescind such undertaking, SBA was and is " * * * conclusively bound * * * " by the contract of the parties. *Jack Mann Chevrolet Co. v. Associates Inv. Co., supra,* 125 F.2d at 783[5].

Although it would be impractical to conclude that an experienced banker such as the late Mr. Walling would lend $100,000 to a borrower for a long term without obtaining collateral security, it would be inequitable to allow SBA to accept from that bank and retain ¼ of 1% of the unpaid balance of Excel's loan under an agreement for the agency to purchase 90% thereof upon default and then refuse to perform its agreement. It is the decision of this Court that the plaintiff First National Bank of McMinnville, Tennessee, recover of the defendant Mr. Thomas S. Kleppe, as director of the Small Business Administration, the sum of $33,494.87 with interest thereon from and after January 6, 1975 at the annual rate of 6%. Rule 58(1), Federal Rules of Civil Procedure.