The FIRST INTERSTATE BANK OF IDAHO, Plaintiff–Appellant,

v.

The SMALL BUSINESS ADMINISTRATION and James C. Sanders, Administrator, Small Business Administration, Defendants–Appellees.

No. 87–4254.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1988.

Decided Feb. 22, 1989.

William J. Russell and Jeffery J. Ventrella, Elam, Burke & Boyd, Boise, Idaho, for plaintiff-appellant.

Jeffrey G. Howe, Asst. U.S. Atty., Boise, Idaho, and John L. Loesch, Small Business Admin., Seattle, Wash., for defendants-appellees.

Before NELSON and BEEZER, Circuit Judges, and REA,* District Judge.

* The Honorable William J. Rea, United States District Judge for the Central District of Califor-

BEEZER, Circuit Judge:

This is a contract dispute between a bank and the Small Business Administration ("SBA") over the SBA's failure to honor a guarantee agreement insuring one of the bank's loans. The district court entered an order of summary judgment for the SBA, on the grounds that the bank had substantially failed to comply with the agreement and that the SBA was not required to rescind its guarantee promptly upon learning of the failure of compliance. We affirm.

## I

On October 3, 1978, the SBA and the Bank of Idaho [1] ("the bank") entered into a Loan Guaranty Agreement establishing the conditions under which the SBA would guarantee the bank's loans to certain businesses. The agreement stated that it covered future loans "subject to SBA's Rules and Regulations." Any change in the terms and conditions of a loan following its approval required written agreement between the SBA and the bank.

In October 1980, the bank applied to the Spokane District Office of the SBA for the SBA's guarantee, pursuant to the master loan agreement, of 90 percent of a $450,000 loan to Cedar Products, Inc. ("CPI"). The bank requested that $206,900 of the loan proceeds be approved for repayment of CPI's prior debts to the bank. In November 1980, the SBA approved the loan in the lesser amount of $320,000, and specified that only $39,219 could be used to repay prior debt. The bank responded by cancelling the application for the SBA guarantee, and reapplying for a guarantee of a $395,000 loan, of which $75,000 would repay CPI's prior debts to the bank.

On January 6, 1981, the SBA and the bank executed an Authorization and Loan Agreement in which the SBA agreed to purchase 90 percent of the $395,000 loan to CPI in case of default. The loan agreement specifically listed the purposes for which the money could be used, including purchase of land, construction, working capital, inventory, and debt reduction. Only $39,219 was approved for repayment of CPI's debts to the bank.

The bank admits that the loan funds were not disbursed as the agreement provided. Rather than $39,219, nearly $154,000 of the loan proceeds were retained by the bank to repay its prior loans to CPI. Furthermore, the bank's loan officer in charge of the CPI account, Clark Lusk, sent the SBA a settlement sheet, dated January 16, 1981, falsely indicating that money had been disbursed as per the agreement.

At approximately the time Lusk filed the false settlement sheet, he asked SBA official Joe Finkel orally for approval to apply certain of the required disbursements to the bank's line of credit loan to CPI. Whether Finkel orally approved anything is disputed; however, on this de novo review of summary judgment, we take the facts as presented by the bank and assume that he did.

The bank sought written approval pursuant to the loan agreement for the changes in the disbursement schedule allegedly approved by Finkel. The SBA did not respond in writing before May, 1981, at which time the bank informed the SBA of the unauthorized disbursements and the false settlement sheet. The Spokane office of the SBA referred the matter to the Inspector General of the SBA. An FBI investigation led to Lusk's 1982 conviction under 18 U.S.C. § 1001 (1982) for making false statements on the settlement sheet. Throughout the investigation, the bank continued to request that its disbursements be approved. It recognized that the SBA guarantee was in danger of denial. The SBA did not make any commitment on the matter, however.

CPI defaulted on the loan in April 1982, and the bank asked the SBA to honor the guarantee. The SBA's local office notified the bank that it intended to recommend denial of the request and, in April 1983, the

nia, sitting by designation.

1. Predecessor-in-interest to appellant First Interstate Bank of Idaho.

SBA informed the bank that the SBA Administrator had approved denial.

The bank sued for damages for breach of contract and for a declaratory judgment that the guarantee remained in force. The district court granted the SBA's motion for summary judgment because of the bank's substantial failure to follow the terms of the agreement, thus permitting the SBA not to honor the guarantee under SBA regulations. The bank appeals on the grounds that its breach was not substantial, and that, even if the SBA had a right to rescind the contract, it lost that right by its failure to rescind promptly. We have jurisdiction over this timely appeal of a summary judgment. 28 U.S.C. § 1291 (1982); Fed.R.App.P. 4(a)(1). We review a grant of summary judgment de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986).

## II

The bank does not question the applicability of SBA regulations as part of the contract. The regulations release the SBA from "any obligation to purchase its share of a guaranteed loan if the lender has not substantially complied with all of the provisions of these regulations and the guaranty agreement." 13 C.F.R. § 122.10(b)(1)(iii) (1979).[2]

 The bank argues, however, that its deviations from the approved disbursements were not a substantial breach justifying the SBA's refusal to honor its guarantee. We apply general federal law.[3]

**2.** This regulation was published on September 28, 1978, 43 Fed.Reg. 44470, 44472, and remained in force at all relevant times after October 1, 1978. It specifically refers only to the guarantee agreement; however, provisions in the guarantee agreement requiring adherence to the terms of any future loan authorization agreement brought the 1981 authorization agreement specifically under the coverage of 13 C.F.R. § 122.10(b)(1)(iii).

**3.** We may adopt state law as the rule of decision even when the question is one of federal law, when there is no need for national uniformity and state law does not frustrate the goals of the federal program, or if a general federal rule disrupts commercial relations predicated upon state law. *United States v. Kimbell Foods*, 440

*United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed. 2d 711 (1979); *Eastern Ill. Trust & Savings Bank v. Sanders*, 826 F.2d 615, 616 (7th Cir.1987). A party may rescind a contract in case of substantial breach by the other party. *See Eastern Ill. Trust*, 826 F.2d at 616–17; *CBS, Inc. v. Merrick*, 716 F.2d 1292, 1296 (9th Cir.1983) (applying New York law). The test of materiality for a federal contract is an all-the-circumstances test. *United States v. Baus*, 834 F.2d 1114, 1125 (1st Cir.1987); *Eastern Ill. Trust*, 826 F.2d at 617; *cf. Restatement (Second) of Contracts* § 241 (1979) [hereinafter "*Restatement*"].

The facts of this case approach the level of a prima facie substantial breach of the loan agreements. We need not mince words about what happened here. The bank, specifically its officer Clark Lusk, attempted twice to persuade the SBA to guarantee a paydown of its large existing loans to CPI, replacing overdue nonguaranteed loans with SBA-guaranteed ones. Not succeeding in this effort, the bank tried to do covertly and illegally, in the amount of approximately $115,000, what it could not do legally; use a government loan program to insure its past bad loans. We analyze the case in terms of the tests of materiality of breach developed by the courts and commentators.

 In applying federal contract law, we are guided by general principles of contract law and by the *Restatement*. *Baus*, 834 F.2d at 1125 (citing, e.g., *Eastern Ill.*

U.S. 715, 728–33, 99 S.Ct. 1448, 1458–61, 59 L.Ed.2d 711 (1979); *Great Southwest Life Ins. Co. v. Frazier*, 860 F.2d 896, 899–900 (9th Cir. 1988). We have done so in cases involving directly relevant state-law defenses to enforcement of SBA contracts. *E.g., Great Southwest*, 860 F.2d at 900. In this case, however, the bank has relied solely upon general federal contract law. We see no reason to favor Idaho common law over the specific interpretations of SBA guarantee agreements decided by other federal courts and the general principles of contract law found in the *Restatement (Second) of Contracts* (1979) in formulating our rule of decision. We emphasize that our decision in no way limits the applicability of state law to federal contracts when relevant.

*Trust,* 826 F.2d at 616). Absent specific language indicating a condition precedent, *see In re Bubble Up Delaware, Inc. v. United States,* 684 F.2d 1259, 1264 (9th Cir.1982), we interpret the contractual language as the mutual exchange of promises supported by consideration. *Restatement, supra* at § 232. The nature of this contract required that the bank perform first. *See id.* at § 234(2). Pursuant to *Restatement* § 237 and the SBA regulations, 13 C.F.R. § 122.10(b)(1)(iii), a material failure of the bank to perform its side of the bargain operated as the nonoccurrence of a condition, which excused performance by the SBA. *Restatement, supra,* at § 225(1).

■ The *Restatement* lists five circumstances as "significant" in determining whether a breach is material. *Id.* at § 241.[4] We consider these factors as guides in applying the all-the-circumstances test, and hold the bank's breach to be material. The SBA was deprived of its specifically bargained-for disbursements by reason of the bank's misallocation of the funds. *See id.* at § 241(a). This was a loan guarantee in furtherance of a governmental policy of helping small business. *See* 15 U.S.C. § 636(a) (1982). The "benefit" the SBA reasonably expected was not financial profit, but assistance to CPI in acquiring specific capital improvements that the SBA felt would best help CPI survive, and thus benefit the public interest. The SBA specifically bargained for this allocation of the funds, and specifically rejected the bank's proposed use of the loan guarantee program primarily to benefit the bank.

Such nonmonetary losses are best compensated by allowing rescission under the material breach standard, rather than by holding the breach to be a nonmaterial one that might give rise to a damage claim, but not excuse the SBA's performance. *See id.* at § 241(b), comment c. By reason of its breach, the bank admittedly suffers forfeiture of its bargained-for interest in receiving the guarantee payment. *See id.* at § 241(c).

*Restatement* § 241(d) is inapplicable, because the bank failed to cure its breach by correcting the misallocation of funds. We find *Restatement* § 241(e) to be most compelling. The bank's covert evasion of its bargained-for performance failed completely to comport with "standards of good faith and fair dealing" as we understand them. *Id.*

The Seventh Circuit recently approved a district court's application of a somewhat different four-part test of materiality to determine whether the SBA was justified in refusing to honor a loan guarantee. *Eastern Ill. Trust,* 826 F.2d at 617.[5] The court held that the district court's judgment that a bank's unauthorized "side loans" to a guaranteed borrower did not materially breach the contract was not clear error. *Id.* The Seventh Circuit's

---

**4. § 241. Circumstances Significant in Determining Whether a Failure is Material**

In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform

comports with standards of good faith and fair dealing.

*Restatement, supra,* at § 241.

**5.** The four factors were:

(1) Whether the breach operated to defeat the bargained-for objective of the parties; (2) whether the breach caused disproportionate prejudice to the non-breaching party; (3) whether custom and usage considers such a breach to be material; and (4) whether the allowance of reciprocal non-performance will result in the accrual of an unreasonable and unfair advantage.

*Eastern Ill. Trust,* 826 F.2d at 617 (quoting *Eastern Ill. Trust & Savings Bank v. Sanders,* 631 F.Supp. 1393, 1396 (N.D.Ill.1986)). The district court obtained the factors from a Seventh Circuit case applying Illinois law. *See Sahadi v. Continental Ill. Nat'l Bank and Trust Co.,* 706 F.2d 193, 196 (7th Cir.1983).

analysis provides a useful alternate framework to determine the materiality of the bank's breach.

The bank contends that the bargained-for objective of the contract was not disturbed by its deviant disbursements, because CPI benefited by having its prior debt load reduced, and the primary objective of helping CPI thus suffered no detriment. In *Eastern Ill. Trust*, the court noted that the appellants' additional loans to the borrower did not prejudice the SBA financially, or harm the general program objective of assisting small business. *Id.*

Accepting the bank's contention that neither SBA nor CPI suffered financial harm, we nevertheless conclude that the bargained-for objective was defeated. The court in *Eastern Ill. Trust* recognized that in assessing a government program that is not profit-oriented, the court may consider nonfinancial objectives and prejudice. *Id.* The SBA has established that its policy guidelines at the time of the loan required a guaranteed bank to maintain an interest in its loans at least equal to its prior exposure, to ensure that the bank followed prudent lending policy in making its guaranteed loan.[6]

Furthermore, the specific amounts and purposes indicated in the loan authorization show SBA's interest in the continued growth of the borrower through capital improvements; these goals were denied through use of the funds to service CPI's debt to the bank, even if no specific financial harm accrued to CPI or the SBA. If the bank's argument is accepted, the specific authorizations in the contract were mere verbiage, subject to the bank's carte blanche to use the funds however it wished, absent specific financial harm to CPI or the SBA.

The second factor is whether the breach caused disproportionate prejudice to the nonbreaching party. *Id.* The Seventh Circuit recognized the possible nonfinancial prejudice to the SBA's regulatory policy against side loans. *Id.* We recognize the

prejudicial impact of the bank's actions on the SBA's policy against allowing banks to apply large percentages of guaranteed loan proceeds to repay prior loans to the borrower.

In *Eastern Ill. Trust*, the district court found that generally the SBA did not repudiate loan guarantees not resulting in monetary loss and that this "custom and usage" was a factor in assessing materiality. *See id.* The course of dealing between the parties here, however, shows the SBA's repeated limitation of authorized amounts payable to the bank. We question the applicability of custom and usage in any case, because the SBA faced the unusual situation of a bank official investigated for, and ultimately convicted of the felony of lying to the SBA about the very disbursements at issue. This factor, and the large amount of deviation, show that no fact the bank conceivably could offer regarding SBA custom would be material enough to merit reversal.

The district court in *Eastern Ill. Trust* found that unfair advantage would accrue to the SBA if it were allowed to escape a liability for which it had contracted. *Id.* In this case, affirmance undoubtedly releases the SBA from a contractual liability. But that advantage is not unreasonable, given the bank's clear violation of the contracted-for disbursement amounts and purposes, and the bank's fraudulent conduct in filing false statements. Also, since the bank improperly paid some $115,000 of the loan money to itself, enforcing the guarantee would result in a windfall to the bank as a direct result of its contractual violation, giving it the unfair advantage.

The bank further relies on *Eastern Ill. Trust* to support its argument that since the violated third paragraph of the guarantee agreement did not explicitly contemplate denial of the guarantee, while the fourth and eighth paragraphs did, the parties did not intend denial as a remedy for a breach of the third paragraph. *See id.* at 618. Although there is some textual ambi-

---

**6.** I.e., in a $395,000 guaranteed loan, only $39,-500 could go to prior loan repayment, an amount equaling the 10 percent exposure of the bank in a new loan 90 percent guaranteed by the SBA.

guity in the contract, the Seventh Circuit's reasoning that Eastern Illinois Trust could not reasonably have expected to know that its violation would lead to repudiation of the guarantee does not apply to these facts. The record conclusively shows that the bank knew at the time of the breach that the SBA had to approve any deviations in writing, and that once the scale of misapplication of the proceeds was known (amounting to nearly one-third of the total loan amount), the bank knew very well that the guarantee was in jeopardy. Any belief to the contrary before the breach was not reasonable; nor was any expectation at the time of making the contract that a breach of this magnitude would not give rise to a right of rescission.

The bank knew that it ran the risk of denial if it disbursed funds without written approval. *See California Pacific Bank v. SBA,* 557 F.2d 218, 224–25 (9th Cir.1977) (where bank's conduct was of doubtful legality under guarantee agreement and applicable regulations, and SBA's response was ambivalent, bank had duty to obtain affirmative renunciation of SBA strictures before proceeding).

### III

The bank argues that even if it substantially breached the contract, the SBA waived any right of rescission it might have had because of long delay [7] in denying the guarantee. A party rescinding a contract must do so within a reasonable time after discovery of a breach justifying rescission.[8] *Baker v. Penn Mut. Life Ins.*

*Co.,* 788 F.2d 650, 662 (10th Cir.1986) (applying Kansas law) (citing 12 W. Jaeger & S. Williston, *Williston on Contracts* § 1460 (3d ed. 1970)). The bank relies primarily on *First Nat'l Bank v. Kleppe,* 409 F.Supp. 110 (E.D.Tenn.1975), a case in which a district court found that the SBA lost its right to rescind due to its delay of some three years after learning of a bank's negligence in failing to obtain required collateral. *Id.* at 112.

*Kleppe* is easily distinguishable, however, because the *Kleppe* court based its holding on the SBA's continued acceptance of payments from the bank following knowledge of the breach. *Id.* at 112–13; *see Baker,* 788 F.2d at 662 (rescinding party must cease accepting benefits under the contract (citing *Williston on Contracts, supra,* § 1460, at 115–19)). Here, the SBA received no financial benefit following the bank's breach.

The *Restatement* provides the best guidance on reasonableness of delay. *Restatement, supra,* at § 381(3).[9] It supplies four factors for analyzing this case: 1) the extent to which the delay enabled the SBA to speculate; 2) the extent to which the delay caused the bank justifiably to rely; 3) the extent to which the reason to rescind was the fault of either party, and 4) the extent to which the bank's conduct contributed to the delay. *See id.* These factors support the SBA. The delay did not benefit the SBA; as a guarantor of the loan without any corresponding future profit, the SBA would have benefited most from immediate rescission, although such a course of action

---

**7.** The SBA first learned of the substantial breach in May 1981. It delayed action during the FBI investigation. The bank demanded performance in April 1982. The SBA notified the bank in June 1982 that the guarantee would likely be denied. Final notice of denial was issued April 14, 1983.

**8.** The *Restatement* does not appear to require notice of rescission within a reasonable time. Rather, a failure of performance suspends and eventually discharges any duty of performance. *Restatement, supra,* at § 242, comment a. *Restatement* § 381, entitled "Loss of Power of Avoidance by Delay," applies to certain types of voidable contracts, not to material failures of performance. The district court viewed the

case as one of avoidance of the contract for "misrepresentation," in which case *Restatement* § 381(2) would apply, rather than material breach. We consider the reasonable time requirement a proper one under these facts, however; despite the *Restatement's* lack of specific provision for it in a case of material failure of performance, it is a common-law contract rule of sufficiently general usage that we apply it to this breach.

**9.** Despite our reservations about § 381's applicability to a material failure of performance, *see supra* n. 8, having decided to require rescission within a reasonable time we see no reason not to use the *Restatement's* factors on reasonableness of delay.

would of course have compromised its policy goals. The bank was well aware that the guarantee was at risk, and under the circumstances any reliance on its continued validity was unjustified.[10] The bank's substantial breach, and the criminal malfeasance of its employee, caused the problem to arise.

The bank apparently contends that the SBA should have elected to rescind immediately upon learning about the improper disbursements, rather than wait for the FBI investigation to establish the full facts, since delay removed the right to rescind. Contrarily, the bank criticizes the SBA on the one hand for acting arbitrarily and without full knowledge, and on the other hand for *not* acting hastily to rescind its guarantee. The delay did not benefit the SBA or unduly harm the bank.

■ The bank argues that the SBA's conduct in orally approving deviations from the approved disbursements led the bank to believe to its detriment that the contract would be honored. The SBA responds that its official, Joe Finkel, did not have the authority to change the terms of the loan authorization. 13 C.F.R. § 101.3–2 Part I, Section B2(b) (1982). This fact is not contested. Persons dealing with government officers assume the risk that those officers exceed their authority; if so, the government is not bound by their representations. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Lavin v. Marsh*, 644 F.2d 1378, 1383 (9th Cir.1981).

■ The bank correctly points out that *Merrill*'s sometimes harsh mandate may be ameliorated in certain cases by estoppel against the government. *See Heckler v. Community Health Services, Inc.*, 467 U.S. 51, 59–63, 104 S.Ct. 2218, 2223–25, 81 L.Ed.2d 42 (1984); *TRW, Inc. v. FTC*, 647 F.2d 942, 950–51 (9th Cir.1981). Reasonable detrimental reliance is essential to governmental estoppel, however. *Heckler*,

467 U.S. at 59, 104 S.Ct. at 2223. The record indicates a complete lack of detrimental reliance on Finkel's statements. First, the improper disbursements were made *before* Lusk contacted Finkel.[11] Second, the bank knew it needed written authority and that its transgressions had placed the SBA guarantee at risk. The record shows that the bank can hardly claim the SBA violated that "minimum standard of decency, honor, and reliability" justifying estoppel. *Id.* at 61, 104 S.Ct. at 2224.

## IV

■ The bank condemns the SBA decisionmaking process as arbitrary and abusive. Specifically, it alleges that the SBA's Spokane office transmitted false information to the Washington, D.C.-based SBA Administrator authorized to deny the guarantee, that the Administrator relied on the false information, and that the investigation was one-sided. The bank alleges that the SBA violated its own investigative procedures. The bank contends that the SBA cannot raise the bank's substantial breach as a defense to the bank's breach of contract claim, because the SBA did not specifically mention substantial breach in its internal decisionmaking memorandum as a ground for denial.

If we were reviewing the SBA's administrative decision under the Administrative Procedure Act, 5 U.S.C. § 706 (1982), we could consider these claims. But this is a contract action, and the process leading to the SBA's decision to deny the guarantee is not relevant to our contract-law analysis of whether the bank's substantial breach excused the SBA's performance. In any case, we see nothing in this record that would rise to the level of "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and thus merit reversal. 5 U.S.C. § 706(2)(A); *see Friends of the Earth v. Hintz*, 800 F.2d

---

**10.** In fact, the bank might have been justified in treating the SBA's equivocation in response to the bank's demand for assurances as a repudiation of the guarantee. *See Restatement, supra,* at § 251(2).

**11.** The false settlement sheet is dated January 16, 1981. According to the bank's brief, Lusk's first call to Finkel was on January 20, 1981.

822, 831 (9th Cir.1986) (court may not set aside agency action as arbitrary and capricious unless there is no rational basis for the action).

## CONCLUSION

The bank's substantial breach of its agreement with the SBA justified the SBA's refusal to honor the guarantee. The SBA did not lose its right of rescission by failing to rescind within a reasonable time. We uphold the summary judgment order.

AFFIRMED.