**SEAGATE TECHNOLOGY LLC, Plaintiff,**

v.

**DALIAN CHINA EXPRESS INTERNATIONAL CORP. LTD, d.b.a. China Express; U–Freight America, Inc.; Gateway Cargo Service Center; and Does One through Ten, Defendants.**

Dalian China Express International Corp. Ltd., d.b.a. China Express and U–Freight America, Third–Party Plaintiffs,

v.

China Eastern Airlines, Third–Party Defendant.

Dalian China Express International Corp. Ltd., d.b.a. China Express and U–Freight America, Cross–Claimants,

v.

Gateway Cargo Services and Does One through Ten, Cross–Defendants.

Gateway Cargo Services, Cross–Claimant,

v.

China Eastern Airlines, Cross–Defendant.

China Eastern Airlines, Counter–Claimant,

v.

Gateway Cargo Services, Counter–Defendant.

No. C 99–04917 MHP.

United States District Court, N.D. California.

Aug. 13, 2001.

See also 169 F.Supp.2d 1146.

Stanley L. Gibson, Gibson Robb & Lindh LLP, San Francisco, CA, for Seagate Technology, Inc.

Sam D. Delich, Conte C. CicalaFlynn Delich & Wise, San Francisco, CA, for Dalian China Express International Corporation, U-Freight America, Inc.

Donald J. Sands, Brent G. Cheneny, Sands Narwitz Forgie Leonard & Lerner, Los Angeles, CA, for Gateway Cargo Service Center.

Frank A. Silane, Kevin R. Sutherland, Condon & Forsyth LLP, Los Angeles, CA, for China Eastern Airlines.

## MEMORANDUM AND ORDER

PATEL, Chief Judge.

This action follows the loss of international cargo owned by Seagate Technology LLC in San Francisco in November 1998. Now before the court is China Eastern Airlines' motion for partial summary judgment against Dalian China Express International Corporation, Ltd. ("China Express"), U-Freight America, Inc. ("U-Freight") and Gateway Cargo Services America ("Gateway"). Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

---

**1.** The parties do not dispute that U-Freight and China Express are agents for each other.

## BACKGROUND

This case arises out of a shipment of disc drives transmitted by air on November 11, 1998, from Shanghai, China to San Francisco on China Eastern Airlines ("China Eastern"). Air shipment was arranged by China Express and U-Freight, freight-forwarding companies.[1] Two different air waybills were issued in relation to the shipment. The first is China Express's air waybill number USH-00450778. The second, and the one at issue here, is China Eastern's air waybill number 781 1178 0941. *See* Declaration of Marc Wang, Exh. E ¶ 3. The China Eastern waybill lists China Express as the shipper and U-Freight as the consignee. Joint Statement of Undisputed Facts ("JS") ¶ 5; JS, Exh. B. According to the air waybill, the original weight of the cargo was 2,850 kilograms. Wang Dec., Exh. E ¶ 3.

The back of the China Eastern waybill lists the "Conditions of Carriage." Among them is the following provision:

> Except as otherwise provided in carrier's tariffs or conditions of carriage, in carriage to which the Warsaw Convention does not apply carrier's liability shall not exceed USD 20.00 or the equivalent per kilogram of goods lost, damaged or delayed, unless a higher value is declared by the shipper and a supplementary charge paid.

JS, Exh. C [2] The Shanghai branch of China Express/U-Freight did not declare a value for the consignment. China Express is listed as China Eastern's agent on the waybill. China Eastern provides blank air waybills to China Express and U-Freight and allows China Express and U-Freight to issue them. JS ¶ 9.

---

**2.** The court cannot identify the paragraph from which this language derives because the copy of the back of the waybill supplied is completely indecipherable.

According to Seagate, when the cargo arrived at San Francisco International Airport, China Eastern released it to its ground-handling agent, Gateway. Gateway took the cargo to its warehouse to await its release to Seagate. *See* Declaration of Mark T. McClenning, Exh. B ¶ 4. Gateway's warehouse is located in South San Francisco, near but not on the grounds of the airport. Before the cargo's rightful owners could claim it, it was released to an unknown party who presented a false warehouse receipt. *See* JS ¶ 3;[3] Wang Dec., Exh. G ¶ 8; McClenning Dec., Exh. D ¶ 6. Since the incident, 679 units of the cargo have been recovered by police. McClenning Dec., Exh. C.

In September 1999, Seagate brought suit against China Express, U–Freight, Gateway and Does One through Ten to recover the value of its lost cargo. On November 12, 1999, U–Freight and China Express filed a third-party complaint against China Eastern for damages and equitable indemnity and contribution, demanding attorneys' fees and costs incurred in defending against Seagate's complaint and reimbursement for any judgment or settlement they are forced to pay. China Express and U–Freight cross-claimed against Gateway and Does One through Ten for damages and equitable indemnity for breaching the duty of care.

After answering the complaint, Gateway lodged a cross-claim against China Eastern for contractual indemnity and declaratory relief in which it claimed that China Eastern is required to defend and indemnify Gateway for the losses alleged by Seagate. Gateway claims that China East-

ern, by refusing to indemnify it, has effectively breached the ground-handling agreement, causing Gateway to incur legal costs associated with its own defense. Gateway demands indemnity for any judgments against it by Seagate, U–Freight or China Express, as well as declaratory judgment that it is entitled to be indemnified for fees and legal costs incurred.

On November 27, 2000, China Eastern counter-claimed against Gateway alleging that Gateway intentionally or recklessly caused the loss in question, and that in defending this action, China Eastern has incurred legal costs. China Eastern also seeks a declaratory judgment that Gateway is not entitled to indemnity from China Eastern for the damages in Gateway's complaint or for legal costs incurred in Gateway's defense of the claim.

On January 22, 2001, China Eastern moved for partial summary judgment against China Express, U–Freight and Gateway. China Eastern seeks declaratory judgment that the liability limits found in the waybill's Conditions of Contract are enforceable against China Express, U–Freight, and Gateway, and that under these terms, its liability is limited to $20 per kilogram, or $48,360.

*LEGAL STANDARD*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a com-

---

**3.** Attached to the Joint Statement of Undisputed Facts at Exhibit A is a South San Francisco Police report detailing the incident in question. According to the report, on the night of November 11, 1998, an unknown suspect approached a Gateway forklift driver with a warehouse receipt for the entire hard drive shipment. The forklift driver proceeded to load all of the drives into the suspect's truck. The suspect then drove away without incident. According to the police report, when a driver arrived on November 12, 1998 with the legitimate warehouse receipt, the shipment was missing. A subsequent investigation produced evidence that the shipment was collected illegally the night before.

plete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [its] own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (holding a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party discharges its burden by showing that the nonmoving party has not disclosed the existence of any "significant probative evidence tending to support the complaint." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

## DISCUSSION

### I. Governing Law

#### A. Warsaw Convention

■ The Warsaw Convention is an international treaty governing the international shipment of goods by air. *See* 49 U.S.C. § 40105, note. Under Article 18 of the Convention, a carrier is liable for damage or loss of any goods "if the occurrence which caused the damage so sustained took place during the transportation by air." *Id.* at art. 18(1). Air transportation is defined under the Convention as "the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or in the case of a landing outside an airport, in any place whatsoever." *Id.* at art. 18(2). This definition is limited, however, by Article 18(3), which states:

> The period of transportation by air shall not extend to any transportation by land, by sea or by river performed outside an airport. If, however, such transportation takes place in the performance of a contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which too place during the transportation by air.

*Id.* at art. 18(3). The presumption that the damage occurred during air transportation can be rebutted with proof that the loss or damage occurred off airport premises. *See Read–Rite Corp. v. Burlington Air Express, Ltd.,* 186 F.3d 1190, 1194 (9th Cir.1999) (holding damage that occurred at a ground handling facility near, but not on the grounds of, airport was not covered by the Warsaw Convention); *see also Victoria Sales Corp. v. Emery Air Freight. Inc.,* 917 F.2d 705, 707 (2d Cir.1990) ("The plain language of Article 18 draws the line at the airport's border.").

■ Seagate contends that when it went to collect its cargo from Gateway's warehouse, the cargo could not be found. This amounts to a claim that the shipment was lost while it was in Gateway's control. There is no dispute that Gateway's warehouse is located outside the boundaries of SFO, and Seagate has not alleged that the loss occurred while the cargo was in transit or being handled on airport premises. Therefore, the Warsaw Convention does not apply.

#### B. Federal Common Law

The weight of authority, both in this circuit and in others, supports the applica-

tion of federal common law to determine a carrier's liability for loss or damage to goods transported by air. *See Read–Rite,* 186 F.3d at 1195; *Deiro v. American Airlines, Inc.,* 816 F.2d 1360, 1365 (9th Cir. 1987); *Klicker v. Northwest Airlines, Inc.,* 563 F.2d 1310, 1316 n. 10 (9th Cir.1977) ("Federal law, rather than state law[,] may be applicable by reason of an overriding federal interest in the uniformity of obligations of domestic air carriers."); *see also Sam L. Majors Jewelers v. ABX, Inc.,* 117 F.3d 922, 928 (5th Cir.1997).

■ Determining the content of federal common law is yet another matter. *See* 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 4518 (discussing the inquiry federal courts must make in determining the content of federal common law). When determining federal common law, a court may look to many different sources, including "pre-*Erie Railroad v. Tompkins* principles of 'federal general common law,' generally recognized common-law principles of the subject-matter area involved in the case, considerations of what rule is best designed to implement the underlying federal policy or statute involved in the litigation, general considerations of equity jurisprudence or notions of systemic or party convenience, analogous federal statutes, and the content of the forum state's law." *Id.*

### (1) State Law/Restatement

■ The Supreme Court has held that there is a general presumption in favor of applying state law principles in federal court actions, which holds particularly true "in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards." *Kamen v. Kemper Financial Servs., Inc.,* 500 U.S. 90, 98, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (noting that corpo-

rations law is an example of an area of law that parties expect to be governed by state-law standards). In this case, the parties have chosen to bring suit in a federal court in the Northern District of California. Seagate appears to have significant contacts with this area, as does Gateway. Neither China Express nor U–Freight has raised any choice-of-law issues. The court assumes that the parties expected, when they entered into the agreements at issue, that California law would govern any disputes arising therefrom. Accordingly, with deference to the parties' expectations and in the interests of federalism, this court may reasonably apply California contract principles to this action.

California courts rely heavily on the Restatement. *See Brinderson–Newberg Joint Venture v. Pacific Erectors, Inc.,* 971 F.2d 272, 277 (9th Cir.1992), *cert. denied,* 507 U.S. 914, 113 S.Ct. 1267, 122 L.Ed.2d 663 (1993). Thus, the court will supplement its application of state law with reference to relevant state and federal court interpretations of the Restatement. The Restatement (Second) of Contracts is equally helpful in that it represents "generally-recognized common-law principles of the subject-matter area involved in the case," another basis for discerning the substance of federal common law. *See* 19 Wright, Miller & Cooper § 4518.

### (2) Common Law Principles of Contract Interpretation

The court may also consider federal contract law, which has its own set of principles. Like California law, federal contract law also places great weight on the Restatement. *See, e.g., First Interstate Bank of Idaho v. Small Bus. Admin.,* 868 F.2d 340, 343 n. 3 (9th Cir.1989). It also boasts unique rules of interpretation for specific kinds of contracts.

For example, under federal common law, a common carrier may limit its liability for harm due to loss or damage of cargo in exchange for a lower carriage rate. *See Deiro,* 816 F.2d at 1365; *Royal Ins. Co. v. Sea–Land Service, Inc.,* 50 F.3d 723, 725 (9th Cir.1995). For the provision limiting liability to be enforceable, the carrier's "contract must offer the shipper (1) reasonable notice of limited liability, and (2) a fair opportunity to purchase higher liability." *Read–Rite,* 186 F.3d at 1198. A provision limiting liability is "prima facie valid if the face of the contract (or, in this case, air waybill) recites the liability limitation and 'the means to avoid it.'" *Id.* (quoting *Royal Ins. Co.,* 50 F.3d at 727). The shipper then has the burden of showing it was not able to purchase greater coverage. *Id.*

## II. *Agency*

### A. *U–Freight/China Express*

In order to determine the enforceability of the China Eastern waybill against China Express, U–Freight and/or Gateway, and whether any of the parties are obligated to indemnify any of the others, the court must first attempt to determine the relationships between them. Two of China Express and U–Freight's claims against China Eastern are for indemnity. The other is for non-delivery of cargo. Because China Express and U–Freight seem to have abandoned their non-recovery of cargo claim by pursuing the indemnity claim exclusively in their briefing, the court will consider only the indemnity claims.

In its motion, China Eastern claims that China Express and U–Freight were agents of Seagate, the cargo shipper. As such, reasonable notice of the opportunity to purchase greater liability in the case of loss or damaged cargo is attributable to them. *See Read–Rite,* 186 F.3d at 1198 (holding that a provision limiting liability is "prima facie valid if the face of the contract (or, in this case, air waybill) recites the liability limitation and 'the means to avoid it.'" *Id.* (quoting *Royal Ins. Co.,* 50 F.3d at 727)). Therefore, the argument runs, because China Express and U–Freight had the opportunity to contract for greater liability, and chose not to, the liability limitations are enforceable against them. Essentially, China Eastern argues it should not have to pay more to China Express and U–Freight than required under the standard liability terms in its waybill.

In their opposition to China Eastern's motion, U–Freight and China Express argue that China Eastern mistakenly treats their complaint as that of a shipper (or shipper's agent) claiming against a carrier. Instead, China Express/U–Freight claim they were also China Eastern's agents when they issued China Eastern's air waybill. In other words, China Express and U–Freight argue they are freight forwarding agents defending a claim for liability because of China Eastern and/or Gateway's alleged negligence; they construe their action as primarily one for indemnity, not for loss or damage to cargo.

U–Freight and China Express claim that without an express provision in its waybill to the contrary, China Eastern, as a carrier, cannot rely on its waybill to limit its liability to indemnify China Express and U–Freight (the freight forwarders) if they are found responsible to Seagate for the amount of lost shipment. To support this proposition, they cite *Victoria Sales Corp. v. Emery Air Freight, Inc.,* 917 F.2d 705 (2d Cir.1990). In *Victoria Sales,* Lassen, a freight forwarder, agreed to ship cargo from Germany to New York. *See id.* at 706. It prepared a waybill listing Victoria as the consignee. *See id.* The cargo was handed over to Speed, B.V. Handling Services ("Speed") in Amsterdam, where the freight was consolidated. *See id.*

Speed in turn contracted with Emery to ship the cargo to New York. *See id.* When Victoria attempted to pick the freight up in New York, it could not be found. *See id.*

The issue for the Second Circuit in *Victoria Sales* was whether Emery was required to indemnify Lassen. *See id.* at 708. Emery argued that the liability limitations found in its waybill should be applied to Lassen. *See id.* But Lassen argued that because Emery was entirely at fault, Lassen could only be held vicariously liable, and that therefore Emery should indemnify it for the full loss, including costs and attorney's fees incurred in defending the litigation. *See id.* Applying common law principles, the Second Circuit held that the waybill liability limitations applied only to loss for damaged, lost or delayed cargo, but did not "address the rights and liabilities between Emery and a party in Lassen's status." *Id.* It continued, "[a]bsent an explicit contractual provision to the contrary, we see no reason to extend the waybill's liability limitations to Lassen's indemnity claim and to abrogate the principle that a primary wrongdoer must indemnify a party whose liability is secondary or vicarious." *Id.*

China Express and U–Freight construe this holding to mean that because China Eastern's waybill does not specifically address indemnity, but only loss or damage to cargo, China Eastern and Gateway must indemnify China Express and U–Freight for any judgment against them and also for their costs in defending the original suit. This is so, China Express and U–Freight claim, because China Eastern was aware that China Express and U–Freight were acting as its agents and the alleged negligence happened while the cargo was in the possession of China Eastern's agent, Gateway. According to this reading of *Victoria Sales*, the China Eastern air waybill is ineffective against indemnity and contribution causes of action and China Eastern must be liable for whole amount of judgment and all expenses incurred in defending the original suit.

In reply, China Eastern argues that *Victoria Sales* is distinguishable, because in that case, Lassen was not a party to the air waybill. Here, China Eastern argues, China Express and U–Freight were listed as the shipper and the consignee, respectively. Therefore, China Eastern contends, the Second Circuit's holding that Emery must indemnify the forwarder because Emery's air waybill did not "address the rights and liabilities between Emery and a party in Lassen's status" is inapplicable to this case. Rather, because China Express and U–Freight were parties to the air waybill, their rights and liabilities were explicitly addressed, and the explicit terms of the waybill limit China Eastern's liability to $20 per kilogram.

The court first notes that there is little case law within this Circuit addressing the issue whether a freight forwarder can demand full indemnification plus the cost of defending a shipper's original suit from a carrier when the carrier's air waybill names the freight forwarder as a party to the waybill and the waybill's terms limit the carrier's liability. But under common law principles of indemnification for vicarious liability, which are more than adequately addressed in this Circuit, China Eastern's arguments are insufficient to satisfy its burden at the summary judgment stage.

■ The issue is one of fault: it is clear from the record the cargo was lost while in Gateway's custody and control. Because China Eastern contracted with Gateway to handle the cargo, China Eastern, as the principal, is arguably responsible for its agent's acts. "There is general agreement that indemnity is permitted where the indemnitee has only an imputed or vicarious liability because of a special relationship

with the actual wrongdoer but is not personally at fault." *United Air Lines v. Wiener,* 335 F.2d 379, 398–99 (9th Cir. 1964). China Eastern's argument that China Express and U–Freight were Seagate's agents and could have contracted for higher liability is irrelevant; the issue is whether these liability limits apply at all. The court is not convinced that the distinction China Eastern draws is dispositive. It is not clear that simply because a forwarder is also a party to a waybill, it cannot also lodge an indemnity claim if the loss occurred outside its actual control, particularly if the forwarder is also the agent of the carrier and was not at fault for the loss. The court is unwilling to grant summary judgment on the basis of China Eastern's restricted view of the Second Circuit's decision in *Victoria Sales.*

China Express and U–Freight argue further that if this court finds that they have waived the liability provisions of their own waybill this waiver should be imputed to China Eastern because China Express and U–Freight acted as China Eastern's agents. Put differently, because China Express and U–Freight were authorized agents of China Eastern, China Eastern is charged with knowledge of any agreements they entered into with Seagate relating to the cargo and limitation of liability for damage to it. This, argue China Express and U–Freight, is yet another reason to deny partial summary judgment for China Eastern; there is a possibility that China Express, and therefore China Eastern as its principal, will be found liable for the full amount.

The court need not address this argument, because in a companion ruling on China Express and U–Freight's motions for summary judgment and Seagate's cross-motion for summary judgment, the court finds that Seagate failed to comply with the contractual provisions governing the time within which to file suit under China Express's air waybill. Accordingly, China Express and U–Freight cannot be liable to Seagate for the full amount of the loss.

B. *Gateway*

China Eastern asks the court to limit its indemnification liability to Gateway to $20 per kilogram, the amount specified in its contract. Paragraph 8.1 of the ground handling agreement provides:

> The Carrier shall not make any claim against the Handling Company and shall indemnify it (subject as hereinafter provided) against any legal liability for claims or suits, including costs and expenses incidental thereto, in respect of: ... (c) damage to or delay or loss of baggage, cargo or mail carried or to be carried by the Carrier ... arising from an act or omission of the Handling Company in the performance of this Agreement unless done with intent to cause damage, death, delay, injury or loss or recklessly and with the knowledge that damage, death, delay, injury or loss would probably result.

Wang Dec., Exh. G ¶ 8.1 China Eastern alleges that "Gateway intentionally or recklessly caused the alleged damages complained of in Seagate's complaint with the knowledge that such a loss would probably result." Answer to Cross–Claim of Gateway Cargo Service Center and Counter–Claim of China Eastern Airlines, filed November 27, 2000 ¶ 30. These conclusory allegations amount to no more than a simple reiteration of the terms of the contract, and fall far short of the evidence necessary to satisfy the summary judgment standard. China Eastern has not alleged a single fact to support its claim that Gateway was knowingly reckless or intended to cause the loss. Furthermore, China Eastern has not responded to Gateway's legitimate argument that its rela-

tionship with China Eastern is governed by the ground-handling agreement, a contract completely separate from China Eastern's air waybill. Indeed, it seems highly irregular to the court that China Eastern would entertain the notion that Gateway would sue it under the air waybill when the ground-handling agreement so clearly governs their relationship. Thus, China Eastern's motion for partial summary judgment against Gateway must be denied.[4]

### III. *Amount of liability*

 China Eastern claims that its liability should be reduced by the value of the number of recovered drives. It is not clear from the record how many disc drives are currently "lost." According to China Eastern, 679 units have been recovered by the police. *See* McClenning Dec., Exh. C.

China Express and U–Freight claim that because Seagate has not yet decided whether to amend its original complaint to account for the recovered cargo, the issue of the amount of liability is not appropriate for summary judgment. The court agrees that because so many of the material facts in this case are unknown, especially those relating to the agency relationships between the parties and their respective liabilities, it would be premature to make such a determination at this juncture.

*CONCLUSION*

For the foregoing reasons, China Eastern's motion for partial summary judgment is hereby DENIED.

IT IS SO ORDERED.

---

**4.** On February 12, 2001, Gateway filed a partial joinder and partial opposition to China Eastern's motion for partial summary judgment. Gateway agreed with China Eastern's second ground for partial summary judgment—that its liability is limited according to the air waybill to $20 per kilogram. Gateway admits it acted as China Eastern's agent, and as such, is entitled to the liability limitations applicable to China Eastern under paragraph 4 of the waybill. In opposition, however, Gateway claims that China Eastern is obligated, under the terms of the ground handling agreement between them, to indemnify it if it is found liable for more than the amount specified in China Eastern's waybill; i.e. $20

per kilogram. Gateway contends that China Eastern's refusal to indemnify it is a breach of the agreement, since there has been no allegation that Gateway acted recklessly or with intent to cause the loss. The agreement was also breached, Gateway claims, when China Eastern lodged a counterclaim against it, since these are not allowed under the contract.