CARMAN TOOL & ABRASIVES, INC., Plaintiff–Appellant,

v.

EVERGREEN LINES, a Corporation; Metropolitan Stevedore Company; M/V EVER GIANT, Her Engines, Machinery, Tackle, Furniture, Apparel, etc., In Rem, Defendants–Appellees.

No. 88–5778.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1988.

Decided April 5, 1989.

Ernest N. Reddick and Marc Derewetzky, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for plaintiff-appellant.

Alan Nakazawa, Williams, Woolley, Cogswell, Nakazawa & Russell, Long Beach, Cal., Christopher J. Mead and John Mahoney, Cooper, White & Cooper, San Francisco, Cal., for defendants-appellees.

Before WALLACE, POOLE and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

We consider whether under the Carriage of Goods by Sea Act (COGSA) a carrier must give the purchaser of goods listed in the bill of lading actual notice of COGSA's package liability limitation.

### Facts

This dispute arises out of a garden variety shipping transaction following the purchase of some heavy industrial equipment. The plaintiff, Carman Tool & Abrasives, Inc., purchased two milling machines, F.O.B. Taiwan, from the Dah Lih Machinery Co. Pursuant to established practice between the parties, Carman authorized Dah Lih to arrange for the shipment of the two machines to Los Angeles, using the services of defendant Evergreen Lines. Dah Lih booked the machinery for shipment on board Evergreen's container ship, the M/V EVER GIANT, arranged for the delivery of the cargo to the EVER GIANT at the port of embarkation, provided all the relevant shipping information for the bill of lading, identified itself on the bill of lading as "shipper," and was the party to whom the bill was issued. Dah Lih then delivered the bill of lading to its bank, which in turn negotiated it to Carman's bank in exchange for a letter of credit authorizing payment to Dah Lih. This was the latest in a series of identical transactions involving Carman, Dah Lih and Evergreen.

When the milling machines arrived in Los Angeles, Evergreen hired defendant Metropolitan Stevedoring Co. to unload

them. After the cargo was removed from the vessel, but before it was delivered to Carman, the milling machines were damaged to the tune of some $115,000.00. Carman was compensated by its insurer, St. Paul Fire and Marine Insurance Company, which then brought suit in Carman's name against Evergreen for breach of contract of carriage and against Metropolitan for negligence.

As an affirmative defense, Evergreen and Metropolitan asserted that their liability, if any, is limited to $500 per package, pursuant to section 4(5) of COGSA, 46 U.S. C.App. § 1304(5) (1982 & Supp. III 1985), the terms of the contract of carriage as contained in the bill of lading and Evergreen's tariff on file with the Federal Maritime Commission.

All parties moved for partial summary judgment as to whether defendants' liability is limited to $500 per package.[1] The district court granted partial summary judgment in favor of defendants, and plaintiffs took an interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(3) (1982).

## Discussion

■ 1. Section 4(5) of COGSA, 46 U.S. C.App. § 1304(5), limits a carrier's liability for loss or damage to $500 per package.[2]

The shipper may, however, increase the carrier's liability by declaring on the bill of lading the nature and value of the goods shipped, and paying an ad valorem freight rate. Under the law of this circuit, a carrier may take advantage of COGSA's package liability limit "only if the shipper is given a 'fair opportunity' to opt for a higher liability by paying a correspondingly greater charge." *Nemeth v. General S.S. Corp.*, 694 F.2d 609, 611 (9th Cir.1982). *See also Komatsu, Ltd. v. States S.S. Co.*, 674 F.2d 806, 809 (9th Cir.1982); *Pan Am. World Airways, Inc. v. California Stevedore & Ballast Co.*, 559 F.2d 1173, 1176 (9th Cir.1977) (per curiam); *Tessler Bros. (B.C.), Ltd. v. Italpacific Line*, 494 F.2d 438, 443 (9th Cir.1974).[3] The fair opportunity requirement is meant to give the shipper notice of the legal consequences of failing to opt for an ad valorem freight rate. The carrier satisfies its initial burden of showing that such a fair opportunity exists by legibly reciting the terms of section 4(5) in the bill of lading, thus shifting the burden of disproving fair opportunity to the shipper. *Nemeth*, 694 F.2d at 611–12.

■ Carman concedes that Evergreen's bill of lading satisfies this condition.[4] Carman also concedes that the bill of lading

1. Plaintiff conceded that Metropolitan is entitled under the express terms of the bill of lading to the benefit of any limitation available to Evergreen.

2. 46 U.S.C.App. § 1304(5) states in relevant part:
   Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

3. Although most circuits have held that carriers are under some obligation to inform shippers of COGSA's liability limitations, the courts are divided as to what that obligation consists of. *See* Sturley, *The Fair Opportunity Requirement Under COGSA Section 4(5): A Case Study in the Misinterpretation of the Carriage of Goods by Sea Act (Part I)*, 19 J. Mar. L. & Com. 1, 13–17 (1988) [hereinafter Sturley, *Part I*]; Comment, *Containerization, the Per Package Limitation, and the Concept of "Fair Opportunity"*, 11 Mar.

Law. 123, 134–36 (1986). While we have required carriers to reproduce section 4(5)'s limitations "on the face of the bill of lading," *Komatsu*, 674 F.2d at 810 (quoting *Pan Am*, 559 F.2d at 1177), the Fifth Circuit has rejected our position and held that "the carrier's published tariff offering the shipper a choice of freight rates, when combined with a clause paramount, gives the shipper constructive notice of the COGSA loss limitation and its right to declare actual value." Comment, 11 Mar. Law. at 135; *see, e.g., Wuerttembergische v. M/V Stuttgart Express*, 711 F.2d 621, 622 (5th Cir.1983) (per curiam).

4. Clause 7(2) of Evergreen's bill of lading specifically recites the language of the package limitation provision of COGSA, 46 U.S.C.App. § 1304(5):
   ... [Evergreen] shall in no event be or become liable for any loss or damage to or in connection with the Goods in an amount exceeding the limit of U.S. Dollars $500 per package ... unless the nature and value of such Goods have been declared by the Merchant before shipment and agreed to by [Ev-

itself provides a place for an excess value declaration. *See id.* It argues, nevertheless, that it was denied a fair opportunity to opt for the higher liability limits because it did not see a copy of the bill of lading until long after the goods were shipped. According to Carman, Evergreen was (or should have been) aware that Dah Lih was only a "nominal shipper," because "the fundamental economics of the transportation transaction were between Evergreen and Carman—not Dah Lih." Appellant's Brief at 12. Carman contends that, since it was the party who would bear the risk of any damage to the shipped goods, Evergreen had a responsibility to give it actual notice of the package liability limitation. This, Carman argues, is embodied in the concept of fair opportunity, as announced in our earlier cases.

We decline to expand the fair opportunity requirement as suggested by Carman.

The requirement is not found in the language of COGSA;[5] it is a judicial encrustation, designed to avoid what courts felt were harsh or unfair results. *See* Sturley, *Part II* at 177 & nn. 319–20.[6] The requirement has been criticized for introducing uncertainty into commercial transactions that should be governed by certain and uniform rules.[7] To accept Carman's suggestion would greatly magnify these problems. A carrier would not only be required to bring the liability limitation to the attention of the party it actually deals with, but also to other parties that it knows, or should know, have an economic interest in the goods being shipped. This would place far too heavy a burden on the carriers.

International shipping transactions are relatively complex. The parties usually include the seller, one or more freight forwarders, a carrier, a consignee, as well as several banks and insurers. Moreover, a

ergreen] and inserted in this Bill of Lading and the applicable ad valorem freight rate, as set out in [Evergreen's] Tariff, is paid. CR 132.

5. As Professor Michael Sturley points out, COGSA contains no language "that even arguably requires the carrier to notify the shipper of the right to declare a higher value [or] to offer the shipper a choice of rates. . . ." Sturley, *The Fair Opportunity Requirement under COGSA Section 4(5): A Case Study in the Misinterpretation of the Carriage of Goods by Sea Act (Part II),* 19 J. Mar. L. & Com. 157, 158 (1988) [hereinafter Sturley, *Part II*]. "The evidence against the fair opportunity requirement is so compelling," he notes, "that it is difficult to see how so many courts could have adopted it." *Id.* at 176.

6. There is cause to doubt the assumption underlying the fair opportunity requirement, that commercially knowledgeable parties need additional protections that Congress did not see fit to write into the statute. *Compare Pan Am,* 559 F.2d at 1177 (rejecting argument that "an experienced shipper should be deemed to have knowledge of an opportunity to secure an alternative freight rate, and higher carrier liability, by reason of his knowledge of COGSA") *with Cincinnati Milacron, Ltd. v. M/V American Legend,* 784 F.2d 1161, 1166 (4th Cir.) (Phillips, J., dissenting) ("it does not seem unduly burdensome to impute to shippers knowledge of all of [COGSA's] terms" as incorporated by reference in a short form bill of lading), *rev'd en banc,* 804 F.2d 837 (4th Cir.1986) (adopting Judge Phillips' dissent). Professor Sturley points out that in international shipping "a high level of sophistication is the norm. Furthermore, a profession-

al freight forwarder generally arranges the details of the shipping contract, even in those rare cases where the shipper is not itself experienced." Sturley, *Part II* at 179. More fundamentally, Professor Sturley suggests that "[c]ourts simply should not question either the existence or the adequacy of the [liability] limitation. That is a legislative concern." *Id.* at 177.

7. Professor Sturley points out that COGSA was adopted pursuant to a multinational agreement known as the Hague Rules. Sturley, *Part I* at 19. "International uniformity was the principal goal, and an American court should therefore strive to construe COGSA consistently with other nations' interpretations of their domestic enactments of the Hague Rules." Sturley, *Part II* at 160. Professor Sturley also comments:

The imposition of a fair opportunity requirement interferes with COGSA's primary purpose—achieving international uniformity—because other nations have not made the same mistake. It also interferes with COGSA's more specific goals. It is unclear, unpredictable, and difficult to apply in commerce. It fosters expensive litigation. And it further complicates bills of lading that already contain too many lines of fine print.

*Id.* at 165. Professor Sturley concludes:

The courts that imposed the [fair opportunity] requirement were wrong to do so, and future courts should avoid the error. Indeed the error is so clear and unequivocal, and the issue is so important, that the Supreme Court should grant certiorari to correct the problem.

*Id.* at 203.

bill of lading is a negotiable instrument; prior to delivery it may be transferred to a party whose name does not appear on its face. *See generally* G. Gilmore & C. Black, *The Law of Admiralty*, 93–100 (2d ed. 1975). It would be next to impossible for a carrier to give actual notice of the liability limitation to everyone a court might later hold has a foreseeable economic interest in the goods. It could also substantially delay shipment, as the carrier attempts to identify and notify parties many thousands of miles away. Invariably, there would be miscommunications and the question of who-said-what-to-whom-when would provide fertile soil enough for a bumper harvest of lawsuits. These are precisely the types of problems that COGSA was designed to prevent. *See* Sturley, *Part II* at 161 & nn. 208–11.

Nothing in our cases points in the direction Carman would have us take. *Tessler, Pan Am, Komatsu* and *Nemeth* all dealt with the adequacy of the notice on the bill of lading.[8] The underlying premise has always been that, so long as the bill of lading, on its face, provides adequate notice of the liability limit and an opportunity to

declare a higher value, the carrier has discharged its responsibility.[9] Parties who do not deal with the carrier directly have a responsibility to obtain a copy of the bill of lading if they have an interest in knowing its terms. We decline to place on the carrier the burden of tracking down these remote parties and advising them of the terms of the bill of lading.[10]

■ 2. Carman makes a narrower argument: It seems to contend that Evergreen's bill of lading requires the carrier to give notice of the liability limitation to every party listed under its definition of "Merchant," not merely to the shipper.[11] We find no support in the bill of lading for this contention. The bill only provides that parties defined as merchants may declare the nature and value of the goods shipped and opt for the applicable ad valorem rate. Nothing in the bill of lading places upon the carrier the responsibility of giving actual notice of the package liability limitation to any party.

## Conclusion

The district court's partial summary judgment holding that defendants are enti-

---

**8.** The carrier in *Nemeth*, for example, was held not to have met its burden of proving fair opportunity because the liability limitation clause in the bill of lading was microscopic and illegible. 694 F.2d at 611. Similarly, in *Pan Am* we held that the mere incorporation of COGSA's section 4(5), without express recitation in the bill of lading, would not satisfy the fair opportunity requirement. 559 F.2d at 1175–77.

**9.** Carman makes much of the fact that a Carman employee discussed rate schedules with one of Evergreen's agents nine months before the shipment of Dah Lih's milling equipment, and that the Evergreen agent failed to mention that the shipper could opt for the ad valorem rate in order to avoid the $500 per package liability limitation. We find little merit in this contention. If carrier agents were required to recite every significant term of the bill of lading every time someone called with an inquiry regarding schedules or rates, they would never have time for anything else. We refuse to burden the flow of information between carrier and shippers with requirements for elaborate—and ultimately meaningless—recitations of terms and limitations. So long as the bill of lading has all the necessary information, the shipper, or any other interested party, has the means of learning everything it may wish to know about the terms of the transaction.

**10.** In many cases, remote parties are already fully aware of the terms of the contract and the notice would be superfluous. Here, for example, Carman had used Evergreen in several prior transactions and had, in its files, bills of lading identical to the one at issue here. Had Carman wanted to know the precise terms of the bill of lading, it had a relatively convenient way of finding out. Indeed, there is every reason to believe that Carman made a knowing and deliberate choice in foregoing the additional cost that would have been incurred in raising the liability limit: it insured the shipment here with St. Paul Fire and Marine Insurance Company. As best we can tell, St. Paul is now bringing this lawsuit in an attempt to shift to Evergreen and Metropolitan the burden of a loss it was paid to insure.

**11.** Evergreen's bill of lading states that Evergreen cannot be held liable in an amount greater than $500 per package "unless the nature and value of such goods have been declared by the Merchant before shipment...." CR 132. The bill of lading defines "Merchant" as the "shipper, Holder, consignee, the recover of the Goods, any person owning or entitled to the possession of the Goods or this Bill of Lading and anyone acting on behalf of any such persons." *Id.*

tled to COGSA's $500 per package limitation is affirmed.