**ROYAL INSURANCE CO.; Vantare International, Inc., Plaintiffs–Appellants,**

v.

**SEA–LAND SERVICE INCORPORATED; Container Stevedoring Company, Inc., Defendants–Appellees.**

No. 93–15376.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 15, 1994.

Decided March 21, 1995.

---

George L. Waddell, Hancock, Rothert & Bunshoft, San Francisco, CA, for plaintiffs-appellants.

James J. Tamulski, Kay, Rose, Tamulski & Maltzman, San Francisco, CA, for defendants-appellees.

Before: FARRIS, BOOCHEVER, and BRUNETTI, Circuit Judges.

BOOCHEVER, Circuit Judge:

Royal Insurance Company insured a yacht shipped by Vantare International, Inc., from Taiwan to Oakland, California. The yacht was shipped on a vessel owned by Sea–Land Service, Inc. The stevedore unloading the yacht, Container Stevedoring Company, dropped it on the dock in Oakland. The yacht was a total loss. The district court found that Vantare's recovery was limited to $500 under a loss limitation clause in the onboard bill of lading. Royal and Vantare appeal, and we affirm.

## FACTS

Vantare International, Inc. ("Vantare") is in the business of buying yachts overseas and selling them in the United States. Its owner and president, Michael Guth, has sold 20–25 yachts since Vantare began operation in early 1987, many bought from Chung–Hwa Boat Building Company ("Chung–Hwa") in Taiwan.

In November, 1987, Vantare and other yacht importers entered into a service contract with Sea–Land Service, Inc. ("Sea–Land"), an ocean carrier, and other ocean carriers who had joined together as the "Asian North American Eastbound Rate Agreement" ("ANERA") (the "Service Contract"). Under the Service Contract, Vantare was entitled to a special reduced freight rate when it shipped on an ANERA carrier. The Service Contract also specified that the individual carrier's bill of lading would determine the terms and conditions of shipment. The tariff governing the Service Contract provided that the carrier's liability would be determined by the carrier's bill of lading. A shipper who desired a higher level of coverage had to so stipulate by showing the value of the goods on the carrier's bill of lading, and had to pay an extra 5.3% ad valorem shipping charge as well as a rate higher than that specified under the Service Contract.

In 1988, Vantare ordered a 58–foot yacht from Chung–Hwa for shipment to Oakland. Chung–Hwa completed Sea–Land's shipping order, requesting shipment under the Service Contract. The yacht was purchased through the use of a letter of credit which required, among other things, presentation of an onboard bill of lading. The yacht was delivered for carriage on March 21, 1988.

The next day, March 22, 1988, after the yacht was on board, Sea–Land issued the bill

of lading to cover the carriage. Item 23 on the face of the one-page bill of lading contains a blank allowing the shipper to enter a declared value and states: "If shipper enters a value, carrier's 'package' limitation of liability does not apply and the ad valorem rate will be charged." Vantare did not fill in the blank to declare a higher value. On the reverse side of the bill of lading, a "Clause Paramount" states:

This bill of lading shall have effect subject to all the provisions of the Carriage of Goods by Sea Act of the United States of America.... The defenses and limitations of said Act shall apply to goods whether carried on or under deck....

Clause 17 provides:

VALUATION. In the event of loss, damage or delay to or in connection with goods exceeding in actual value the equivalent of $500 lawful money of the United States, per package, ... the value of the goods shall be deemed to be $500 per package or unit, unless the nature and higher value of goods have been declared by the shipper herein and extra charge paid as provided in Carrier's tariff.... The word "package" shall include ... cargo shipped on a ... cradle....

The bill of lading also provided in Clause 2 that if other parties, including stevedores, were found liable in tort, "the limitations of liability provided by law and by the terms of this bill of lading shall be available to such other persons."

Vantare insured the yacht under an open cover policy which automatically provided coverage when Vantare's insurance broker submitted a declaration to Royal Insurance Company ("Royal") indicating the date of shipment and the value of the yacht.

On April 6, 1988, Container Stevedoring Company ("Container Stevedoring") dropped the yacht while unloading it from the vessel. The yacht was a total loss. Royal paid Vantare $395,000 under the insurance policy.

Royal and Vantare (hereinafter referred to as Vantare) filed suit in federal district court for recovery of $600,000 in damages. Sea–Land and Container Stevedoring denied liability, and asserted that if liability were found, the terms of the bill of lading limited recovery to $500. The parties filed motions for partial summary judgment. The district court granted Sea–Land's motion, limiting recovery to $500. Sea–Land and Container Stevedoring then consented to judgment in the amount of $500, and Royal and Vantare appeal.

## DISCUSSION

We review a grant of summary judgment de novo. *Travelers Indem. Co. v. Vessel Sam Houston,* 26 F.3d 895, 899 (9th Cir. 1994).

### I. *Fair Opportunity*

The Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. app. §§ 1300–1315, regulates the terms of international ocean carriage covered by bills of lading. Section 4(5) of COGSA provides that a carrier's liability is limited to $500 per package:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.

46 U.S.C. app. § 1304(5). "The shipper may increase the carrier's liability, however, by declaring on the bill of lading the nature and value of the goods shipped and paying a higher freight rate." *Travelers Indem.,* 26 F.3d at 898.

 Sea–Land can avail itself of COGSA's $500 liability limitation only if Vantare had a "fair opportunity" to escape the limitation by paying a higher charge. *Id.* (citing cases). The carrier has the initial burden of producing prima facie evidence showing that it provided notice to the shipper that it could pay a higher rate and opt for a higher liability. *Id.* This initial burden is met if the language of Section 4(5) is printed legibly in the bill of lading, either by recitation or in language to the same effect. *Id.* It is not enough merely to incorporate COGSA by reference. *Id.*

■ In 1989, we decided *Institute of London Underwriters v. Sea–Land Serv., Inc.*, 881 F.2d 761 (9th Cir.1989), a remarkably similar dropped-yacht case in which Sea–Land and Container Stevedoring were also defendants, and involving the same bill of lading used in this case. Although COGSA by its own terms does not apply to on-deck shipments such as the yacht in this case, *London Underwriters* held that the "Clause Paramount" of the bill of lading incorporating COGSA meant that COGSA's terms governed the shipment. *Id.* at 765–66. We also found that because Item 23 on the face of the bill gave the shipper the opportunity to declare a higher value for the cargo, and Clause 17 on the reverse recited the $500 limitation and the means to avoid it, the bill of lading constituted prima facie evidence that the shipper had the opportunity to avoid the $500 limitation. *Id.* at 766. *London Underwriters* also held that the shipping of a yacht in a "cradle" was included in the bill of lading's definition of "package." *Id.* at 768.

*London Underwriters* thus establishes that COGSA applies to the shipment of the yacht, and that Sea–Land made a prima facie showing that its bill of lading gave Vantare an opportunity to avoid the $500 limitation under COGSA.

Once Sea–Land established that its bill of lading was prima facie proof of Vantare's opportunity to opt out of the $500 loss limitation, the burden then shifted to Vantare to prove that it was denied such an opportunity. *Id.* at 766; *Travelers Indem.*, 26 F.3d at 899. Vantare argues that because the bill of lading was issued on board, after the yacht was loaded for shipment, Vantare had insufficient notice of the $500 limitation and the means to avoid it.

■ Sea–Land points out that the letter of credit by which the yacht was purchased required an on-board bill of lading. Sea–Land does not, however, argue that the letter of credit estops Vantare from complaining that the bill of lading was issued after the yacht was loaded. Instead, Sea–Land notes that the district court found that Chung Hwa had shipped at least five yachts aboard Sea–

Land vessels, four to Ponderosa Marine, the former company of Vantare's owner, Michael Guth. Three of those shipments had bills of lading identical to the one at issue here. Sea–Land argues that these facts, which Vantare does not dispute, show that Vantare was thus familiar as a matter of commercial practice with the terms and limitations of Sea–Land's bill of lading.

This circuit has held that actual possession of the bill of lading with the $500 liability limit is not required before a party with an economic interest in the shipped goods can be held to the limitation. In *Carman Tool & Abrasives, Inc. v. Evergreen Lines*, 871 F.2d 897 (9th Cir.1989), a tool company sued an ocean carrier when machines shipped on the carrier were damaged after they were unloaded. The company attempted to avoid the $500 limit by arguing that the otherwise sufficient bill of lading was presented to the manufacturer of the machines rather than to the tool company, which bore the risk of any damage to the shipped goods and which did not see a copy of the bill of lading until long after the machines were shipped. Refusing to require actual notice, *id.* at 900, this court held:

> The underlying premise has always been that, so long as the bill of lading, on its face, provides adequate notice of the liability limit and an opportunity to declare a higher value, the carrier has discharged its responsibility.... So long as the bill of lading has all the necessary information, the shipper, or any other interested party, has the means of learning everything it may wish to know about the terms of the transaction.

*Id.* at 901, 901 n. 9.

*Carman Tool* does not address a situation in which the bill of lading was issued after the goods were loaded onto the vessel, but its refusal to require actual notice of the liability limitation supports a finding that the on-board bill of lading was sufficient. This is especially appropriate when, as here, there has been a course of dealing between the parties using identical bills of lading.[1] *See*

---

1. The district court found "there was an implied understanding between the parties that Sea–

Land would issue its customary bill of lading," based on the shipments to Guth's former compa-

*id.* at 901 n. 10 (tool company had in its files several identical bills of lading from same carrier; notice would therefore be superfluous, as "[h]ad [the tool company] wanted to know the precise terms of the bill of lading, it had a relatively convenient way of finding out."); *see also Travelers Indem.*, 26 F.3d at 899 (sophisticated shipper who had used carrier on previous occasions and was familiar with its bill of lading failed to raise question of material fact whether it was denied fair opportunity to opt out of limitation); *London Underwriters*, 881 F.2d at 766 (same); *Caterpillar Overseas, S.A. v. Marine Transp. Inc.*, 900 F.2d 714, 719 (4th Cir.1990). Cases examining the shippers' actual knowledge of the $500 limit have involved bills of lading that did not adequately recite COGSA's limitation on liability, or did not properly provide an opportunity to declare a higher value for the cargo. *See, e.g., Komatsu, Ltd. v. States S.S. Co.*, 674 F.2d 806, 809–10 (9th Cir.1982); *Pan Am. World Airways, Inc. v. California Stevedore & Ballast Co.*, 559 F.2d 1173, 1176–77 (9th Cir.1977) (per curiam); *Great Am. Ins. Cos. v. M/V Algenib*, 1988 A.M.C. 1030, 1032–33 (N.D.Cal.1987); *Royal Exchange Assurance of Am., Inc. v. M/V Hoegh Dene*, 1988 A.M.C. 868, 875–76 (W.D.Wash. 1987).

Vantare thus is reduced to claiming that the issuance of this particular bill of lading the day after the yacht was loaded denied Vantare a fair opportunity to opt out of the liability limit. We reject this argument. The Eleventh Circuit recently held that a bill of lading mailed to the shipper after the ship reached its destination afforded notice of the $500 COGSA limitation and "ample opportunity to declare excess value." *Unimac Co. v. C.F. Ocean Serv., Inc.*, 43 F.3d 1434, 1438

(11th Cir.1995). The Eighth Circuit reached a similar conclusion to find that COGSA's statute of limitations applied even though the bill of lading, whose clause paramount incorporated COGSA, was accepted after the loading of the shipment and before the damage occurred. *Gamma–10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1254 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995).

Other courts have found that loss limitations apply when the bill of lading was issued much later than in this case. *See Luckenbach S.S. Co. v. American Mills Co.*, 24 F.2d 704, 705 (5th Cir.1928); *Eastern Outfitting Co. v. Pacific Mail S.S. Co.*, 26 F.2d 270, 272 (N.D.Cal.1928); *Garnay, Inc. v. M/V Lindo Maersk*, 816 F.Supp. 888, 894 (S.D.N.Y.1993); *Cera–Tech, S.A. v. S/S Allison Lykes*, 1992 A.M.C. 2089, 2099–100, 1991 WL 94178 (E.D.La.1991); *New Hampshire Ins. Co. v. Seaboard Marine, Ltd.*, 1992 A.M.C. 279, 281–82, 1992 WL 33861 (S.D.Fla.1992).

■ The "actual" notice courts have required to find a fair opportunity is not that the bill of lading must be in the shipper's hands before the cargo is loaded on the vessel, but rather that the bill of lading clearly state the $500 limitation and the method for avoiding it. *See Henley Drilling Co. v. McGee*, 36 F.3d 143, 145 (1st Cir.1994) (noting that all courts require some sort of notice of COGSA limitation, and describing Ninth Circuit's "demanding" notice requirement that bill of lading recite COGSA's liability limitation); *Royal Exchange*, 1988 A.M.C. at 877 (whether shippers had actual notice of liability limitation only relevant once bill of lading is shown not to afford fair opportunity).[2] Vantare argues that because the bill of

ny, Ponderosa Marine. Vantare does not dispute this finding of fact, nor does it argue that Guth's Ponderosa experience cannot be imputed to his present company. Instead, it argues only that no assumption should be drawn from past experience, and presents affidavits from three Chung Hwa employees stating that they were unaware of the limitation. As noted above, many cases have found that the past experience of the shipper is relevant in determining whether it had a fair opportunity to opt out of the $500 limitation.

2. COGSA § 4(5) states that the $500 limit applies "unless the nature and value of such goods have

been declared by the shipper *before shipment* and inserted in the bill of lading. . . ." (emphasis added). In *Henley Drilling*, the First Circuit characterized the fair opportunity doctrine as requiring "adequate advance notice" of the COGSA limitation. 36 F.3d at 145. Vantare notes the statutory language, but cites no case requiring a bill of lading before loading, and *Henley Drilling* does not discuss when the bill of lading must issue. We see no reason to require that the bill of lading be issued before loading on board, especially given the common practice of on-board bills of lading. We note that if Vantare had wanted to

lading was issued on-board, its liability limitations do not apply, even though the bill of lading complies in every respect with COGSA. That extension of the notice requirement would invalidate the liability provisions of every on-board bill of lading, even when, as in this case, there were prior dealings between the parties and the terms of purchase required that the bill be issued on-board.

Nothing prevented Vantare from inquiring and securing a copy of the bill of lading form before shipping, although the actual bill of lading was not issued until the yacht was on board. We find that the liability limitation in the on-board bill of lading does apply.

## II. *Other issues*

Vantare argues that even if it had notice of the liability limitations in the bill of lading, the ANERA Service Contract denied Vantare a fair opportunity to avoid the $500 limitation, because it contained only a single specified freight rate for yachts such as the one in this case, and thus did not offer the opportunity to declare a higher value and pay a higher rate.

■ Vantare's only mention of the Service Contract in the district court was in its opposition to Sea–Land's motion for partial summary judgment. Vantare argued simply that the Service Contract was silent about package limitations. Vantare did not raise the issue of the effect of a single specified freight rate. We do not consider issues not raised in the district court, unless they implicate jurisdiction, injustice might otherwise result, or public policy demands their resolution. *Ratanasen v. California Dep't of Health Servs.*, 11 F.3d 1467, 1473 (9th Cir.1993). None of those exceptions applies in this case. At any rate, the Service Contract explicitly provides that the bill of lading determines the terms and conditions of an individual shipment, and that the bill of lading prevails over the Service Contract if a conflict arises.

■ Vantare further argues that the bill of lading is insufficient to limit Sea–Land's lia-

bility because Clause 17 refers to the carrier's tariff for the higher charge, but "none of what possibly could be considered 'carrier's tariffs' clearly state the procedure."

Because we hold that the bill of lading provided Vantare with a fair opportunity to avoid the liability limitation, we need not consider the language of the tariffs. In construing a liability limitation clause in a bill of lading which also referred to "the applicable tariff" for the rate to be paid if a higher value is declared, the First Circuit recently held that the absence of *any* published tariff did not deny the shipper a "fair opportunity," because the bill of lading itself provided that opportunity. *Henley Drilling*, 36 F.3d at 146 ("Careful examination of the authorities has disclosed no appellate case which requires a valid tariff—in addition to actual or constructive notice—as an element of the 'fair opportunity' doctrine."). As long as the bill of lading expressly states the $500 liability limitation, reference to the tariff is unnecessary. *See id; Komatsu*, 674 F.2d at 811, 811 n. 7 (finding tariff that did not expressly limit liability insufficient for prima facie evidence of fair opportunity where bill of lading also did not recite limitation, although "[a] different case might have been presented had the bill of lading here expressly alerted the shipper to a $500 package limitation ... or if the tariff by its own terms imposed a specific package limitation," and reserving question whether tariff must include liability limitation).

■ Vantare next argues that Container Stevedoring's liability is not limited by the bill of lading. *London Underwriters* disposes of that argument; the bill of lading's clear language extends the COGSA liability limitation to Container Stevedoring.

## III. *Sanctions*

■ Sea–Land and Container Stevedoring argue that because Vantare has shown no legal or factual basis for reversal, Sea–Land and Container Stevedoring should be awarded double fees and costs as sanctions for a

---

declare a higher value, it offers no reason why it could not have done so on the on-board bill of

lading.

frivolous appeal. We conclude that in the absence of prior authority from this circuit, Vantare's arguments regarding the on-board bill of lading are not so lacking in merit as to justify sanctions under Fed.R.App.P. 38. *See Dahl v. Hem Pharmaceuticals Corp.*, 7 F.3d 1399, 1405 (9th Cir.1993).

## CONCLUSION

 Vantare's final argument is that the $500 limitation is simply disproportionate to the damage. Nevertheless,

> [w]hile the $500 per package minimum may be unrealistic in today's economy, the remedy must come from Congress. Until that occurs, an experienced shipper should not be permitted to gamble that no damage will occur, pay the customarily lower freight rates for goods of undeclared value, and then, when destruction in fact occurs, cry "I did not know" and seek an exception to its own obligation under 46 U.S.Code, sec. 1304(5).

*C.A. La Seguridad v. Delta S.S. Lines, Inc.*, 1981 A.M.C. 996, 1003 (S.D.Fla.1980).

We AFFIRM the district court.