**INTERNATIONAL FIRE & MARINE INSURANCE CO., LTD.,** Plaintiff,

v.

**SILVER STAR SHIPPING AMERICA, INC.,** Defendant.

No. CV 96–3633 WJR (JRx).

United States District Court, C.D. California.

Jan. 22, 1997.

Charles C. Kwak, Jeffre T. Lowe, Kwak, Kim & Park, Los Angeles, CA, for Plaintiff.

David S. Porter, Kenneth F. Mattfeld, Jr., Fisher & Porter, Long Beach, CA, for Defendant.

### ORDER RE: DEFENDANT SILVER STAR'S SUMMARY JUDGMENT MOTION.

REA, District Judge.

Defendant's motion for summary judgment was filed on October 10, 1996, and oral argument was heard on November 4, 1996. After having considered the oral argument, reviewed the papers submitted in support of and in opposition to the foregoing motion, the file in this case, and the applicable authorities, the Court rules as follows.

Defendant's motion for summary judgment is GRANTED, and summary judgment is thus entered in favor of International Fire & Marine Insurance Co., Ltd., in the amount of $500 for the reasons set forth herein.

### A. Standard for Evaluating Summary Judgment Motions.

"Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." *Musick v. Burke*, 913 F.2d 1390, 1393 (9th Cir.1990). In short, the evidence must appear insufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

Furthermore, while great care must be taken in evaluating a motion under Rule 56, and while "all justifiable inferences are to be drawn in [favor of the nonmoving party]," *Id.* at 255, 106 S.Ct. at 2513, Rule 56 motions are *not* disfavored motions. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). The Rule "must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.*

### B. There is No Genuine Issue of Material Fact as to Whether Silver Star Was a "Carrier" in Relation to Functional Robotics, and was thus Entitled to be a Party to a "Contract of Carriage" Extending COGSA's Liability Limitation.

Plaintiff International Fire asserts that the Carriage of Goods by Sea Act ("COGSA") limitation of liability, and its contractual extension by the parties, is not applicable here, as Silver Star was not a "carrier" entitled to invoke COGSA's liability limitation or provision for extension thereof, and that the bill of lading is not a "contract of carriage" as defined in COGSA. (Opposition at 2–3).

In support of this assertion, plaintiff selectively cites pieces of COGSA provisions, (*see* Opposition at 3), ignoring both statutory provisions and case law which make clear that plaintiff, as a "non-vessel-operating-common-carrier" (NVOCC), is considered a *"common carrier* that does not operate the vessels by which the ocean transportation is provided...." 46 U.S.C.App. § 1702(17) (emphasis added).

■ It is clear, particularly in the Ninth Circuit, that an NVOCC who arranges for a vessel to carry a shipper's cargo is a *carrier* in relation to the shipper, though a shipper in relation to the vessel. *See* 46 U.S.C.App. § 1702(17). *See also Logistics Mgmt. v. One Pyramid Tent Arena*, 86 F.3d 908, 911 n. 1 (9th Cir.1996) (NVOCC acts as a carrier by arranging for transportation of goods); *id.* at 914 ("although [an NVOCC] may not own the ships on which its customers' goods are phys-

ically transported, it nevertheless is the 'carrier' *responsible for the through transportation* of such goods....") (quoting *Fireman's Fund Am. Ins. Companies v. Puerto Rican Forwarding Co., Inc.*, 492 F.2d 1294, 1295 (1st Cir.1974)); *All Pacific Trading v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1430 (9th Cir.1993) ("NVOCC is considered a carrier in its relationship with the shipper of the goods"). This authority, speaking directly to an NVOCC's status as a carrier in relation to a shipper, even where the NVOCC merely *arranges for the transportation of goods* by another carrier, clearly belies plaintiff's assertion that an NVOCC is *not* a " 'common carrier' ... just because it books space" on a vessel. (*See* Opposition at 5).

■ As a matter of law, defendant Silver Star is clearly a "carrier". As such, Silver Star is entitled to the protections of its contractual extension of COGSA's limitation of liability to cover any damages which might have occurred during loading.

C. *There is no Genuine Issue of Material Fact as to Whether Functional Robotics had a "Fair Opportunity" To Avoid the $500 Liability Limitation.*

1. *Defendant Makes a Prima Facie Showing of Fair Opportunity to Avoid the $500 Limitation.*

■ Although a carrier does, under COGSA, have the right to limit liability, a carrier must, as a prerequisite, "give the shipper 'a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge....'" *Tessler Bros. (B.C.) Ltd. v. Italpacific Line*, 494 F.2d 438, 443 (9th Cir.1974).

■ While the carrier bears the initial burden of demonstrating "fair opportunity", *Mori Seiki USA, Inc. v. M.V. Alligator Triumph*, 990 F.2d 444, 449 (9th Cir.1993); *Nemeth v. General Steamship Corp., Ltd.*, 694 F.2d 609 (9th Cir.1982), it is well established that the carrier can meet this burden by demonstrating that there is legible language on the bill of lading that either mirrors, or is to the same effect as the language of COGSA Section 4(5). *Royal Insurance Co. v. Sea–Land Service, Inc.*, 50 F.3d 723,

727 (9th Cir.1995); *Mori Seiki*, 990 F.2d at 449; *Nemeth*, 694 F.2d at 611.

This language need not appear on the front page of the bill of lading. Rather, "[t]he carrier's initial burden is satisfied as long as the appropriate language appears '*in* the bill of lading'. (Cites omitted)." *Mori Seiki*, 990 F.2d at 449.

■ Silver Star has met its initial burden, and has thus made a prima facie showing that Functional Robotics had the "opportunity to avoid the [liability] limitation." *Tessler Bros.*, 494 F.2d at 443. Silver Star, in exhibit A of its Motion for Summary Judgment, attached a copy of the bill of lading entered into between Functional Robotics and Silver Star. (*See* Rhee decl. at ¶ 2). This bill of lading includes a line which reads as follows: "DECLARED VALUE _____ READ CLAUSE 29 HEREOF CONCERNING EXTRA FREIGHT AND CARRIER'S LIMITATION OF LIABILITY." (See exhibit A). Clause 29 is found on the next page, and reads:

In case of any loss or damage to or in connection with Goods exceeding in actual value the equivalent of $500 lawful money of the United States, per package, or in case of Goods not shipped in packages, per shipping unit, the value of the Goods shall be deemed to be $500 per package per shipping unit. The Carrier's liability, if any, shall be determined on the basis of a value or $500 per package or per shipping unit or pro rata in case of partial loss or damage, *unless the nature of the Goods and a valuation higher than $500 per package or per shipping unit shall have been declared by the shipper before shipment and inserted in this Bill of Lading, and extra freight paid if required....*

This language is to precisely the same effect as COGSA section 4(5). *See* 46 U.S.C. § 1304(5). Furthermore, the copy provided by Silver Star which, according to the declaration of Stephan Rhee, is a "true and correct copy (front and back) of [the] Bill of Lading....", (Rhee decl. at ¶ 2), is indeed legible. As such, Silver Star has made a prima facie showing that Functional Robotics

had the opportunity to forego the liability limitation.

#### 2. Plaintiff International Fire Does Not Meet Their Burden of Overcoming Defendant's Prima Facie Case By Demonstrating That There was no Fair Opportunity to Overcome the Liability Limitation.

##### a. Once Defendant Made a Prima Facie Showing of Fair Opportunity, Plaintiff Had the Burden of Adducing Evidence to the Effect that no Fair Opportunity Existed.

In a summary judgment motion, there is no burden on the moving party "to produce evidence showing the absence of a genuine issue of material fact, *even with respect to an issue on which the nonmoving party bears the burden of proof.*" Celotex, 477 U.S. at 325, 106 S.Ct. at 2554 (emphasis added). In this case, once defendant made a prima face showing of fair opportunity, the burden shifted to plaintiff to demonstrate the absence of fair opportunity. *See Royal Insurance Co.,* 50 F.3d at 729; *Mori Seiki,* 990 F.2d at 449 ("Once the carrier meets [its] initial burden, the 'burden of disproving fair opportunity [shifts] to the shipper.' (Cite omitted))."

##### b. Plaintiff Fails to Rebut Defendant's Prima Facie Showing of Fair Opportunity.

##### b.1. Presenting Functional Robotics With the Bill of Lading Was Sufficient, as Defendant Was Not Required to Explain or Discuss its Terms with Functional Robotics.

Plaintiff submits a declaration by Steve Reimbold, sales manager for Functional Robotics, which states that Reimbold was presented with the bill of lading already completed, and was "not made aware of the 'Declared Value' provision," or of any "opportunity to place a value in that blank." (Reimbold decl. at ¶¶ 2, 4).

As a matter of law, defendant was simply not required to do anything other than present Functional Robotics with a bill of lading which, *in its written terms,* put Functional Robotics on notice as to the liability limitation and means of avoiding said limitation.

This is evidenced by the fact that the written requirement alone makes up the prima facie case for fair opportunity. Rebutting that prima facie case would involve calling into question the existence or nature of these prima facie elements, not suggesting that *additional* elements, such as orally instructing a shipper as to the liability provision, are "missing."

Indeed, courts have upheld liability limitations even where limitation provisions were first presented to shippers *on board the carrier ship, Royal Insurance Co.,* 50 F.3d 723, or where shippers were first presented with such provisions *by mail, after the ship had reached its destination. Id.* at 728 (citing *Unimac Co. v. C.F. Ocean Serv., Inc.,* 43 F.3d 1434, 1438 (11th Cir.1995).

The present case presents a far less drastic scenario, in that Functional Robotics was presented with the bill of lading prior to shipment. Plaintiff complains only that defendant did not make a point of flagging the provision for Functional Robotics' benefit. Clearly, the case law does not demand such affirmative efforts, but demands only that clear *written* notice be provided.

##### b.2. The Question of a Signature, Though Vociferously Argued By Plaintiff International Fire, is Both (1) Irrelevant as a Matter of Law in Light of the Circumstances and (2) Insufficient as an Issue of Fact to Go to a Jury.

The most hotly disputed issue in this case, as evidenced particularly by the supplemental papers provided by plaintiff, is the question of whether or not the bill of lading was signed. While this argument is insufficient *factually* to go to a jury, as will be discussed below, it is also irrelevant as a matter of law. Indeed, while the Court granted plaintiff leave to search for its original copy of the bill of lading, so as to "prove" that it is unsigned, the Court, having again reviewed the applicable law, including the authorities provided in plaintiff's supplemental papers, concludes, as in its tentative ruling, that a signature is simply not required as a matter of law in circumstances such as these, where there is

independent evidence of notice and a fair opportunity to opt out of a liability limitation.

*b.2.a. Signature is Irrelevant as a Matter of Law Where There is Independent Evidence of Notice and Fair Opportunity to Opt out of a COGSA Liability Limitation, Even Where the Limitation Results From a Contractual Extension of COGSA.*

■ While the question is not directly addressed in the case law, it seems relatively clear that "notice" of a liability limitation, even without a signature on the bill of lading, is all that is required to establish "fair opportunity" to opt out. Hence, where there is independent evidence of "notice" as defined by the Ninth Circuit, the existence or nonexistence of a signature is irrelevant as a matter of law, even where the liability limitation results from a contractual extension of COGSA.

Circuit courts generally, and the Ninth Circuit in particular, have focused almost entirely upon the question of whether a bill of lading provided *notice* of the opportunity to declare higher value. Hence, courts have, as noted above, found "fair opportunity" even where bills of lading were presented *on board the carrier ship at the time of loading,* or were presented via mail, *after the carrier ship had reached its destination. See infra,* citing *Royal Insurance Co.,* 50 F.3d 723; *Id.* at 728 (citing *Unimac Co. v. C.F. Ocean Serv., Inc.,* 43 F.3d at 1438).

The Ninth Circuit in *Royal Insurance Company* noted that "[t]he 'actual' notice courts have required to find a fair opportunity is not that the bill of lading must be in the shipper's hands before the cargo is loaded on the vessel, but rather that the bill of lading clearly state the $500 limitation and the method for avoiding it." *Royal Insurance Co.,* 50 F.3d at 728.

The same court, citing *Carman Tool & Abrasives, Inc. v. Evergreen Lines,* 871 F.2d 897 (9th Cir.1989), noted that *"actual possession of the bill of lading* with the $500 liability limit *is not required* before a party with an economic interest in the shipped goods can be held to the limitation." *Royal Insurance Co.,* 50 F.3d at 727 (emphases added).

It is entirely inconsistent to suggest that, while one need not actually have *received* the bill of lading before one can be held to its terms, one must necessarily have *signed* the bill of lading before one can be held to its terms. Indeed, the lesson of *Carman Tool* and *Royal Insurance Co.* is that the focal point of any inquiry as to acceptance of a bill of lading's terms is *notice,* whether actual or constructive. *Id.*

And while the possible nonexistence of a signature might ordinarily raise an issue of fact as to whether a shipper actually received the liability limitation, and hence received "notice" as defined by the Ninth Circuit, this is clearly not the case here, as demonstrated by plaintiff's own evidence. The declaration of Steve Reimbold, though complaining of the fact that the liability limitation was not orally pointed out to him, clearly states that he, as agent for Functional Robotics, indeed *received* the bill of lading, including the liability limitation provision. Indeed, Reimbold clearly states that all information contained in defendant's Exhibit "A" was presented to him. (Reimbold decl. at ¶¶ 2, 4). *See Mori Seiki,* 990 F.2d at 449 ("notice" given when bill of lading presented which mirrors COGSA's language limiting liability).

Finally, the above analysis, though used generally in analyzing fair opportunity to opt out of COGSA provisions, is applicable here despite the fact that defendant's argument rests upon a contractual extension of COGSA's terms. COGSA provides that parties may contractually extend its provisions so as to apply beyond ocean carriage. *See, e.g., Styling Plastics v. Neptune Orient Lines,* 666 F.Supp. 1406, 1409 (N.D.Cal.1987). In so far as plaintiff alleges that the damage occurred prior to the period of ocean carriage, defendant's summary judgment motion rests upon the fact that COGSA's provisions were extended beyond ocean carriage. None the less, the question of fair opportunity to opt out of contractual extensions of COGSA is subject to precisely the same analysis as is fair opportunity to opt out of standard COGSA coverage.

Indeed, the Ninth Circuit in *Royal Insurance Company* held first, that COGSA ap-

plied to shipment of a yacht as a result of contractual extension. *Royal Insurance Co.,* 50 F.3d at 727. The court then went on to apply general "fair opportunity" analysis in determining whether or not the plaintiff had received a sufficient chance to opt out of the liability limitation. *Id.* As noted above, the Court concluded that fair opportunity to opt out of the contractual extension existed, and that such opportunity was not necessarily dependent upon even physical delivery of a bill of lading. *Id.*

■ Hence, in this case, plaintiff's own evidence, indicating delivery to Reimbold of a bill of lading containing the relevant COGSA language and contractual extension thereof, is sufficient to demonstrate "fair opportunity" to opt out of the liability limitation, and thus to bind plaintiff to the limitation provision.

*b.2.b. Even if a Signature Were Required, There is No Genuine Issue of Material Fact as to the Existence of a Signature.*

While it is true that the movant, in a summary judgment motion, "has the burden of showing that there is no genuine issue of fact ... the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict". *Anderson,* 477 U.S. 242, 256, 106 S.Ct. at 2514. Plaintiff never disputes that the original, allegedly signed copy of the bill of lading was given to plaintiff. Rather, plaintiff asserts only that, as plaintiff cannot find the bill of lading, and as defendant cannot produce a copy, that there is no *evidence* that the bill was signed.

Defendant, however, in its supplemental papers, provides a declaration from Kay Kang, an employee of Silver Star who was responsible for reviewing the bill of lading in question for "correctness and completeness." (*See* Kang decl. at ¶ 3). Kang indicates that a standard review was undertaken of the bill

of lading, that such a review "includes verification that the bill of lading contains the correct weight, cubic, number of pieces, and description of the cargo *and that the original bill of lading is signed,*" *id.,* and that Kang "would have noticed if a signature was missing." *Id.* Furthermore, Kang explains that the reason only the original would bear a signature, and that there would be no signed copies of the bill, is as follows:

> Silver Star uses a computer printer with multi-part forms to prepare its bills of lading. The carbon paper is stripped from the multi-part form at the time the form is removed from the printer. For this reason, the signature on the original does not transfer to the copies. Silver Star does not copy signed bills of lading because a copy containing a signature creates a risk that the bill of lading will be fraudulently negotiated.

(Kang decl. at ¶ 6).

Given the introduction of evidence to the effect that the bill of lading was signed, as an unsigned bill of lading would not have passed Kang's inspection, plaintiff's failure to do anything more than point out that the bill of lading has not physically been proffered, does not create a genuine issue of material fact. Hence, in light of the evidence to the effect that the bill was signed, and plaintiff's failure to in any way counter this evidence,[1] there is no triable issue of fact as to whether or not the bill of lading was signed. Thus, even if such an issue were *not* irrelevant as a matter of law, it is a non-issue as a question of fact.

*b.3. Plaintiff Offers No Evidence to Suggest that the Original Bill of Lading was Illegible.*

■ Similarly, plaintiff seeks to poke holes in defendant's case by asserting, in its opposition papers, that "discovery has yet to be

---

1. It is true that defendant did not present this evidence until its supplemental papers were filed in response to plaintiff's supplemental papers, thus leaving plaintiff without an opportunity to respond directly to the Kang declaration. None the less, plaintiff has argued throughout the course of the summary judgment proceedings, both in its original opposition papers and in its

supplemental papers, that there is no evidence of a signature. Had plaintiff any evidence to the effect that the bill was not signed, it would have been nonsensical for plaintiff *not* to have already presented such evidence. Hence, plaintiff can not be deemed to have unfairly been denied the opportunity to present such evidence.

concluded to determine if, in fact, the 'bill of lading' issued by SSS to the shipper contained a legible second page." (Opposition at 8). While it is true that a demonstration of legibility is part of defendant's prima facie case, *see infra*, defendant has met this burden by providing the Court with a legible *copy* of the bill of lading, including the COGSA language with regard to the limitation of liability, offered on the second page of exhibit A at clause 29. (See Exhibit A).

Plaintiff's claim that more discovery would have to be done to determine legibility falls flat in light of obvious facts. Indeed, plaintiff submits a declaration by Steve Reimbold which explicitly states that Reimbold was "presented with the document identified as Exhibit 'A'". (Reimbold decl. at ¶ 4). Nowhere does Reimbold indicate that this document is not, as the declaration of Stephen Rhee indicates, a *"true and correct copy"* of the bill of lading (*see* Rhee decl. at ¶ 2) (emphasis added), in that the original, unlike the copy, was illegible.

Furthermore, if plaintiff is suggesting that exhibit A is *itself* illegible, and that this fact may be determined upon further discovery, plaintiff's argument is again groundless. For while the print on the second page of exhibit A is indeed tiny, it clearly meets any standard for legibility as a matter of law. In *Mori Seiki*, the Ninth Circuit refused to adopt a "strict and technical approach" to assessing adequacy of typesize in evaluating a bill of lading, instead concluding that visibility to the "naked eye" was sufficient. *Mori Seiki*, 990 F.2d 444, 449, 449 n. 1.

The second page of exhibit A clearly is visible to the naked eye. As a matter of law, then, it is legible. Furthermore, the Reimbold declaration does not in any way suggest that exhibit A's legibility is not representative of the legibility of the document received by Functional Robotics, as could easily have been easily alleged. Hence, plaintiff's assertion that more discovery must be conducted to determine legibility is groundless.

*b.4. It is of no Legal Consequence that the Full Value of the Punch Press Was Listed Under a Description of the Item and in an Invoice Received by Silver Star.*

■ Plaintiff further argues that there is, "at minimum," a question of fact as to wheth-

er indication of the value of the cargo as "USD 68,000" on a "description of [cargo]" section of the bill of lading, and on an invoice provided by Functional Robotics, serves to trump Functional Robotics' failure to declare a value for purposes of liability limitation in the space provided on the bill of lading. (Opposition at 9).

This argument has no merit. If Functional Robotics had, in a space other than the one provided specifically for liability limitation purposes, made some declaration on the bill of lading to the effect that it wished to declare a higher value for liability purposes, that could well have created an issue of material fact. *See Nemeth*, 694 F.2d at 612 (evidence that plaintiff made an attempt to declare a higher valuation creates a genuine issue of material fact).

This is not the case. The only indication of the punch press' actual value on the bill of lading was, by plaintiff's own admission, *prepared by defendant*. (See Reimbold decl. at ¶ 2 (all information contained in exhibit A was prepared by defendant)). Clearly, this would not constitute evidence that *plaintiff* sought to declare a higher value. Even more fundamentally, this recitation of value was included only as part of a standard "description of packages and goods" on the bill of lading. This is irrelevant to the question of whether a higher value was sought to be declared for liability purposes. *See Marine Transportation Services Sea–Barge Group, Inc. v. Python High Performance Marine Corp.*, 16 F.3d 1133, 1141 (11th Cir.1994) (declaration of $100,000 value on face of bill of lading irrelevant to liability limit where declaration appeared under a section marked "insurance coverage").

· The fact that Functional Robotics submitted an invoice for the punch press which indicated its value is similarly irrelevant, as "[t]he shipper must declare the value of its cargo on the face of the bill of lading, not on some other related documents, to satisfy the valuation requirement. (Cites omitted)." *Id.*

*b.5. Plaintiff Offers No Evidence to Suggest that Functional Robotics was Charged at a Rate Inconsistent with a $500 Liability Limitation.*

Similar to its argument on the legibility issue, plaintiff suggests that more discovery

should be done to determine how plaintiff's rates were determined, as, "for all IFM knows, at this point, it did pay a higher tariff entitling it to a higher liability rate." (Opposition at 8).

By making a prima facie showing that a fair opportunity was presented to seek a higher liability limitation, and that the shipper *did not seek a higher liability limit,* defendant has raised a logical presumption that the shipper was treated as a customer opting for a standard $500 limitation, and was charged accordingly. In other words, defendant's prima facie case provides no reason whatsoever to suggest that Functional Robotics was *not* charged for the $500 limitation that was declared.

As such, the burden is on plaintiff to demonstrate that the shipper was charged in a manner inconsistent with the presumption raised by the liability limitation on the bill of lading. *See infra, citing Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54 (moving party has no burden to produce evidence with respect to issue on which nonmoving party bears burden of proof).

Plaintiff fails to do so, and its assertion that more discovery would be needed again fails to hold up. Again, Steve Reimbold's declaration indicates that he "personally handled the transaction ... for the sale *and shipment* of [the punch press]." (Reimbold decl. at ¶ 1). There is no indication as to why Reimbold could not simply have inquired as to how Functional Robotic's own shipping rate was determined. In short, this does not appear to be an area in which a "serious claim can be made that respondent was in any sense 'railroaded' by a premature motion for summary judgment." *Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554.

Defendant, in making a prima facie case that Functional Robotics, with fair opportunity to do otherwise, opted to accept a $500 liability limitation, has clearly created a presumption that the $500 limitation was in fact acted upon. It is not enough for plaintiff simply to assert that, "for all [it knows]", this might *not* have been the case. There is no apparent reason why plaintiff could not already have inquired as to an itemization of Functional Robotics' own rate calculation, and could not have presented evidence to overcome the presumption that the $500 limitation was acted upon. In failing to do so, plaintiff has again not met their burden of overcoming defendant's prima facie case.

Defendant's motion for summary judgment is hereby granted, and summary judgment is thus entered in favor of International Fire & Marine Insurance Co., Ltd., in the amount of $500.

IT IS SO ORDERED.